Argued and submitted January 13, on appeal, reversed and remanded in part; affirmed on cross-appeal April 21, 1993

In the Matter of the Marriage of

Priscilla Lewis SOUTHWELL,
*Respondent - Cross-Appellant,*

*and*

Scott Charles SPETTEL,
*Appellant - Cross-Respondent.*

(15-91-06130; CA A73773)

851 P2d 599

George W. Kelly, Eugene, argued the cause and filed the briefs for appellant - cross-respondent.

Howard Feinman, Eugene, argued the cause and filed the brief for respondent - cross-appellant.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

RIGGS, J.

**RIGGS, J.**

Husband appeals an award of child support in a dissolution judgment. Wife cross-appeals, assigning error to the visitation provision. We reverse and remand on appeal and affirm on cross-appeal.

This was an 11-year marriage. At the time of trial, both parties were 39 years of age and the ages of the children were 11, 9, 5 and 3. The parties agreed on the division of personal property and the trial court approved their agreement. Neither party requested nor received spousal support. The trial court gave custody of the children to wife with substantial visitation to husband.

The court awarded aggregate child support of $1,664 per month. The court apparently made its computations in accordance with the guidelines, without any apparent intent to deviate from them. There is evidence that husband had a monthly gross income of $5,221. Wife had been teaching for approximately ten years at the University of Oregon and grossed $4,234.11 per month for nine months of the year. On an annualized basis that amounted to $3,175 per month. In the past, wife also earned additional monies for teaching summer school or participating in research projects. In the summer of 1991, the extra gross income from summer school came to $3,020. Wife testified that the availability of summer work was speculative, although she admitted that she had had summer work of a similar nature and at a similar income level throughout her work history at the University. If the amount of summer earnings made in 1991 is added to wife's nine month income, wife has an annualized gross salary of $3,427 per month.

Husband argues that the trial court's attempt to follow the guidelines contains two errors: It failed to accurately compute wife's income, and it failed to follow the rules concerning shared custody. We first address husband's argument that the trial court erred in failing to include wife's summer income in its computations under the guidelines.

■     The trial court prepared a "Support Computation Worksheet B" and incorporated it by reference in the judgment of dissolution. The worksheet shows that the trial court considered only wife's nine-month income in its calculations.

This case does not involve deviation from the child support guidelines, it involves calculation of income. On *de novo* review, we find ample evidence to support husband's contention that wife's summer earnings were more than speculative expectations and, as such, those earnings must be included as part of her gross income. OAR 137-50-320(4). The trial court erred in failing to include the summer income. We, therefore, find that wife's annualized monthly income is $3,427.

■ We next turn to husband's contention that the trial court failed to follow the shared custody rules provided in the child support guidelines. OAR 137-50-450 is a special rule applicable to "shared physical custody," defined as a situation in which one parent has physical custody not more than 65 percent of the time and the other parent has physical custody not less than 35 percent of the time. Under the guidelines, whenever there is shared physical custody, OAR 137-50-330 computations are *replaced* by computations under OAR 137-50-450. Once there is a finding of shared custody, OAR 137-50-450(1) requires that "the amount of support to be paid *shall* be calculated as provided in section (2) through (9) of this rule."[1] (Emphasis supplied.)

According to the visitation schedule ordered by the trial court, husband receives at least 37 percent of the "overnights" each year. Wife argues that the shared custody rule

---

[1] OAR 137-50-450 provides, in part:

"(2) Determine combined adjusted gross income.

"(3) Determine each parent's percentage contribution to combined adjusted gross income.

"(4) Determine basic child support from the scale set down in OAR 137-50-590.

"(5) Multiply the basic child support amount by 1.50.

"(6) Determine each parent's pro rata share of the amount obtained in (5) by multiplying that number by the percentage determined in (3).

"(7) Determine the percentage of overnights the child will be in the physical custody of each parent.

"(8) Each parent's support obligation is equal to the amount determined for that parent in (6) multiplied by the percentage of time the child will be in the custody of the other parent.

"(9) The parent with the larger obligation will pay to the parent with the smaller obligation an amount equal to the difference between the two support obligations determined in (8). The parent with the smaller obligation will not make support payments."

does not apply to overnights and that the proper determination of whether there is shared custody can only be based on the actual number of *hours* that the children spend with the noncustodial parent. If wife is correct, husband's visitation amounts to less than 35 percent of that time. If husband is correct that the number of overnights is the proper analysis of shared custody, then father has at least 37 percent of the time with the children and the parties have shared physical custody as defined by OAR 137-50-450. Thus, the issue is what the word "time" means in the rule.

Both husband and wife strive mightily to persuade us that time should be construed in a manner consistent with each party's position. Our review of the commentary to the rule is not helpful in determining precisely what is meant by the use of the word "time." However, on balance, we agree with husband. Wife's interpretation would have the trial court compute, down to each and every hour, the percentage of time on an annual basis that each parent has physical custody. That interpretation would produce an administrative nightmare. Wife's interpretation also seems not to follow the purpose of the rule, which we find is intended to compensate a noncustodial parent who incurs substantial child-related expenses that are connected with the child's *overnight* stays at the noncustodial parent's house.[2] We also find support for husband's position in subsection (8) of the rule, which expressly states that the court is to

> "determine the percentage of *overnights* the child will be in the physical custody of each parent." (Emphasis supplied.)

Subsection (9) then provides that

> "each parent's child support obligation is equal to the amount determined for that parent in (7) multiplied by the *percentage of time* the child will be in the custody of the other parent." (Emphasis supplied.)

In other words, the term "percentage of time" from subsection (9) refers directly to the term "percentage of overnights"

---

[2] The commentary to OAR 137-50-450 provides, in part, that:

"[The] rule also recognizes that the establishment of two residences for the child costs more than the typical situation where one parent has physical custody, and the other exercises only visitation but does not provide a second residence for the child, nor incurs the extra costs implied in shared physical custody."

from subsection (8), and presumably has the same meaning as the term "percent of the time" in subsection (1). We hold that, for purposes of computing "time" in OAR 137-50-450, the percentage of overnights the children spend with each parent is the proper measure for determining whether the parents share physical custody.

■ We turn to wife's cross-appeal. Essentially, wife argues that it was not in the best interests of the children to provide the amount of visitation ordered in the dissolution judgment. Although we review *de novo*, unless we can affirmatively say that we are able to make a clearly preferable decision, the decision of the trial court is generally not disturbed. *Moe and Moe*, 66 Or App 947, 676 P2d 336 (1984). We find no evidence in this record that suggests that the children will be harmed by the visitation ordered by the trial court, nor do we find any evidence that suggests that such visitation is not in the children's best interests.

On appeal, reversed and remanded for recalculation of child support; affirmed on cross-appeal. Costs to husband.