MARY PAULETTE RAUCH, NOW KNOWN AS
MARY PAULETTE SHEETS, APPELLEE,
v. DONALD KEITH RAUCH, APPELLANT.
590 N.W. 2d 170

Filed February 19, 1999.   No. S-97-1224.

David W. Watermeier, of Morrow, Poppe, Otte, Watermeier & Phillips, P.C., for appellant.

Bernard J. Glaser, Jr., and Richard M. Glidden for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

In this case, the father requested modification of his child support obligation. In response, the mother also requested modification of the child support obligation and a change in health insurance coverage. The district court increased the father's child support obligation, directed him to obtain new health insurance, and ordered him to pay the mother's attorney fees in the amount of $800.

## SCOPE OF REVIEW

Modification of a dissolution decree is entrusted to the discretion of the trial court, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. See, *Faaborg v. Faaborg*, 254 Neb. 501, 576 N.W.2d 826 (1998); *Ahrens v. Conley*, 5 Neb. App. 689, 563 N.W.2d 370 (1997).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997).

## FACTS

Mary Paulette Rauch and Donald Keith Rauch were granted a dissolution of marriage on September 11, 1984, with custody

of the couple's two minor children, Nathan Michael and Meghan Nichole, given to Mary. Donald was ordered to pay child support in the amount of $350 per month for both children and was directed to provide health insurance for the children. Donald's child support obligation was increased in December 1988 to $550 per month for both children. In 1984, Mary and the children moved from Lincoln to western Nebraska. They live approximately 250 miles from Lincoln.

In February 1992, Donald alleged that he had experienced a material change in his income. Donald, who was a salesperson for Midland Medical Supply Company (Midland Medical), had lost one of his major clients and, consequently, suffered a substantial decrease in his income. Recognizing that Donald was experiencing economic hardship, Mary stipulated to a 1-year reduction in Donald's child support obligation. The district court entered an order reducing Donald's child support obligation for 1 year from $550 per month to $400 per month.

Shortly after losing his major client, Donald left his job with Midland Medical and began farming full time an 80-acre farm that he and his current wife owned outside of Martell, Nebraska. Donald's counsel admitted at oral argument that in the 10 years Donald has owned the farm, it never returned a profit. Donald alleged that the farm had averaged a loss of $18,720 per year for the last 3 years. In 1994, Donald started working as a truckdriver in order to supplement his income. From trucking, Donald earned $4,199 in 1994, $29,241 in 1995, and $35,738 in 1996.

On January 31, 1997, Donald filed a petition for modification of his child support obligation, claiming he had a substantial decrease in his income attributable to farming losses incurred in the last 3 years. In response, Mary alleged that her income had also substantially decreased and that she was entitled to an increase in child support. She also alleged that the children's health insurance carrier had not reimbursed her for a large portion of the children's medical expenses and asked the district court to order Donald to obtain a different policy.

From the time of the dissolution until 1994, Donald maintained health insurance through Midland Medical. In 1994, Donald unilaterally enrolled in a health maintenance organiza-

tion (HMO) with Mutual of Omaha. The HMO policy required Donald to choose a primary physician in Lincoln for each person covered under the policy. This primary physician would be required to render all nonemergency medical treatment. In emergency situations, a physician other than the primary physician could render treatment and would be compensated by the HMO, as long as the HMO was contacted within 24 hours of the treatment. Any nonemergency medical treatment rendered by a physician other than the primary physician was not covered by the policy.

In January 1995, Meghan was diagnosed with diabetes and required frequent medical treatment. Rather than driving approximately 250 miles to Lincoln to see her children's primary physician for nonemergency health care, Mary sought medical treatment for the children with physicians other than the primary physician covered under the HMO. As nonemergency treatment rendered outside of the Lincoln area was not covered by the HMO, Mary incurred approximately $7,000 in medical bills.

After a hearing, the district court determined that it would not consider Donald's farming losses when calculating his monthly income. The court acknowledged that the Nebraska Child Support Guidelines indicate that business losses should be taken into consideration, but the court treated the farming as a hobby rather than a business because Donald had never earned a profit from farming. The court relied solely upon the income Donald earned from driving a truck in calculating his monthly income. The court did not deduct from Donald's monthly income the amount spent on providing health insurance for the children.

Donald was ordered to pay $905 per month in child support while both minor children resided with Mary and to pay $631 per month in child support when only one minor child resided with her. Donald was also ordered to obtain a health insurance policy which covered the children's nonemergency and emergency care within a 100-mile radius of Mary's home. The parties were ordered to share equally in the cost of medical care not covered by insurance. Donald was ordered to pay Mary's attorney fees.

Donald filed a timely notice of appeal. Pursuant to our power to regulate the caseloads of Nebraska's appellate courts, we moved this case to our docket.

## ASSIGNMENTS OF ERROR

In summary, Donald claims that the district court erred in not considering farming losses when calculating his child support obligation, in finding that the cost which he incurred to maintain health insurance for the children should not be deducted from his monthly income, in finding that the existing health insurance for the minor children was insufficient, and in not considering that Donald had two families to support when calculating his child support obligation to the children of his prior marriage.

## ANALYSIS

A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification and which was not contemplated when the prior order was entered. See, *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). In the context of marital dissolutions, a material change of circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Sullivan v. Sullivan*, 249 Neb. 573, 544 N.W.2d 354 (1996). Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Swenson v. Swenson*, 254 Neb. 242, 575 N.W.2d 612 (1998). In the absence of proof of new facts and circumstances arising since the time of the original decree, an allowance of child support therein will be deemed res judicata. *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993).

The parties presented sufficient evidence to show a material change of circumstances. Both presented evidence which illustrated that they had experienced significant changes in their respective incomes. Mary also established that one of the minor children had been diagnosed with diabetes.

The Nebraska Supreme Court has adopted and subsequently amended the child support guidelines since the entry of the divorce decree in this case. We therefore conclude that there have been sufficient changes in circumstances to justify a modification of the present child support obligation and health insurance coverage. See, *Schmitt v. Schmitt*, 239 Neb. 632, 477 N.W.2d 563 (1991) (adoption of child support guidelines constitutes material change in circumstances); *Hoover v. Hoover*, 2 Neb. App. 239, 508 N.W.2d 316 (1993) (child's diagnosis with disease which required outlay of additional expense not contemplated at time of original decree or first modification was material change in circumstances); *Olmer v. Olmer*, 2 Neb. App. 178, 507 N.W.2d 677 (1993) (amendment of guidelines might be considered material change in circumstances).

Having determined that modification of the dissolution decree was justified by material changes in circumstances, we review the modifications for an abuse of discretion. In Nebraska, dissolution of marriage cases are equitable in nature. *Faaborg v. Faaborg*, 254 Neb. 501, 576 N.W.2d 826 (1998). This rule applies not only in original dissolution proceedings, but also in proceedings for modification of the decree of dissolution. *Id.*

First, Donald claims that the district court abused its discretion by not considering his farming losses in its calculation of his monthly income. Child support obligations are determined by using the parents' total monthly income. The guidelines define total monthly income as the income of both parties derived from all sources, except all means-tested public assistance benefits and payments received for children of prior marriages. Nebraska Child Support Guidelines, paragraph D. Donald argues that since the guidelines indicate that income from all sources should be considered, the court abused its discretion when it did not consider his farming losses.

To the extent that Donald owns and operates a farm, he is self-employed. Generally, farming losses and depreciation are figured in arriving at the total monthly income considered in the guidelines. Paragraph D of the guidelines provides that if a party is self-employed, depreciation claimed on income tax returns should be added back to income or loss from the business or farm to arrive at an annualized total monthly income. This language suggests that the losses from Donald's farming operation should have been included in the calculation of his monthly income.

Paragraph C of the guidelines instructs that all orders for child support obligations shall be established in accordance with the provisions of the guidelines, but exceptions are allowed. Paragraph C states that if the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied, a deviation may be allowed, as long as the deviation takes into consideration the best interests of the child. See, also, Neb. Rev. Stat. § 42-364.16 (Reissue 1998); *Faaborg v. Faaborg, supra.* In the event of a deviation, the reason for the deviation should be contained in the findings portion of a court's decree or order, or worksheet 5 should be completed by the court and filed in the court file. Nebraska Child Support Guidelines, paragraph C. Deviations are allowed whenever the application of the guidelines in an individual case would be unjust or inappropriate. Nebraska Child Support Guidelines, paragraph C(5); *Knippelmier v. Knippelmier*, 238 Neb. 428, 470 N.W.2d 798 (1991).

We have recently held that income for the purpose of child support is not synonymous with taxable income. See *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998). Therefore, even though Donald is entitled to take a loss from his taxable income due to his farming losses, it does not necessarily follow that the loss is also considered for the purpose of calculating his child support obligation.

The evidence shows that during the last few years, Donald has invested considerable sums of money in his farm. He spent approximately $71,550 on farming equipment in 1993 and $4,000 in 1994. The support of one's children is a fundamental

obligation which takes precedence over almost everything else. See *State v. Reuter*, 216 Neb. 325, 343 N.W.2d 907 (1984). It would be unfair for Donald to benefit from his choice to incur debt and build equity in his farm at the expense of his children. See *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994).

In *Knippelmier v. Knippelmier, supra*, we noted that the actual earning capacity of a spouse is frequently more important than the profitability of that spouse's business in determining the propriety of an award for child support. Also, the guidelines provide that if applicable, earning capacity may be considered in lieu of a parent's actual, present income. Nebraska Child Support Guidelines, paragraph D. This is especially true when it appears that the parent is capable of earning more income than is presently being earned. See *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996) (proper amount of child support is determined not necessarily by parent's earnings, but by parent's earning capacity).

The district court stated that considering the consistent, lengthy, and substantial losses reflected in Donald's farming, it was justified in deviating from the guidelines. As the court noted, Donald earned only $43,826 from farming in the last 3 years, while he incurred $114,865 in income tax losses. In light of the circumstances of this particular case, we find that consideration of the farming losses might create a false impression of Donald's financial situation and lead to an unjust award of child support. Thus, the court did not abuse its discretion when it deviated from the guidelines by not considering the farming losses when calculating Donald's monthly income.

Next, Donald argues that the amount of his insurance premium should be deducted from his monthly income prior to calculating the child support obligation. The increased cost to the parent for health insurance for the child or children of the parent shall be allowed as a deduction from gross income. Nebraska Child Support Guidelines, paragraph E. The parent requesting an adjustment for health insurance premiums must submit proof of the amount of the premium.

Our review of the record shows that Donald did not sustain his burden of proof on this issue. Donald asked the district court to deduct the amount of his insurance premium from his

monthly income calculation, even though he failed to prove that he incurred an increased cost to maintain the coverage for Nathan and Meghan. Donald testified that the premium on the HMO policy was $400 per month. Donald, his current wife, his wife's son, and Nathan and Meghan are all covered by the insurance policy. Donald did not establish that the insurance premium actually increased because Nathan and Meghan were named on the policy.

Donald also testified that he pays his current wife $300 per month to compensate for the insurance cost for Nathan and Meghan. He concluded that he was obligated to compensate his wife $300 per month because he had two children and she had only one child. However, Donald did not establish that the $300 per month actually reflected the cost of insuring Nathan and Meghan. Therefore, Donald presented no information by which the district court could have found that he was entitled to deduct $300 per month from his monthly income, and we find no abuse of discretion.

In addition, the district court directed Donald to obtain new health insurance for Nathan and Meghan. Donald's HMO policy would not cover nonemergency care provided by a physician other than the children's primary physician. Mary and the children live approximately 250 miles from the primary physician. If Mary wanted the HMO to cover the children's routine health care, she was forced to drive approximately 500 miles to and from Lincoln. Even if Mary contacted the HMO within 24 hours of treatment by a doctor other than the primary physician, the treatment was covered by insurance only if it was characterized by the HMO as emergency medical treatment. After Meghan was diagnosed with diabetes, Mary was obligated to frequently take her to the doctor, and Mary incurred substantial medical costs as a result thereof. In light of the facts that Mary and the children now live approximately 250 miles from Lincoln and that one of the children has been diagnosed with an illness which requires frequent medical attention, the district court did not abuse its discretion when it ordered Donald to obtain a new health insurance policy for the children.

In his appellate brief, Donald argues that the district court abused its discretion when calculating child support, because it

failed to consider his obligation to support his present family. During oral arguments, this assignment of error was waived, and we do not address it.

The judgment of the district court is affirmed.

AFFIRMED.