ANN KENNEDY ELSOME, APPELLEE, V.
PAUL T. ELSOME, APPELLANT.
601 N.W. 2d 537

Filed October 15, 1999.   No. S-98-730.

Christopher A. Vacanti, of Cohen, Vacanti & Higgins, for appellant.

Anne M. Breitkreutz and Thomas J. Nack, of Hotz & Weaver, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Paul T. Elsome appeals the order of the district court for Douglas County modifying the amount of his monthly child support obligation. For the reasons stated below, we reverse and remand with directions.

## II. STATEMENT OF FACTS

Paul and his former wife, Ann Kennedy Elsome, were divorced by a decree entered March 10, 1997. All terms of the dissolution, including division of the marital estate, alimony, child custody, support, and related expenses were stipulated to by the parties, and the trial court approved the stipulation in the decree of dissolution.

Two daughters were born to Paul and Ann during their marriage. These children were approximately 7 years and 2½ years of age, respectively, when the decree was entered. The stipulation which the court approved in its decree included the parties' agreement to "joint legal custody" of both children. The

stipulation did not designate either Paul or Ann as the primary physical custodial parent of their daughters, but instead contained a detailed shared custody arrangement based upon 14-day cycles which generally provided that the children spend 4 days every week with Ann and the following 3 days every week with Paul. As a result, Paul had physical custody of the children approximately 42 percent of the time, and Ann had physical custody of the children approximately 58 percent of the time.

When the decree was entered, Paul was unemployed. To meet living expenses, the family was drawing from a $100,000 severance payment Paul had received when his job was eliminated as a result of his employer's acquisition by another business. Ann was self-employed as a consultant, earning a gross income of less than $2,000 per month. Both Paul and Ann were actively seeking full-time employment, and they stipulated that either party could pursue modification after July 1, 1997, approximately 4 months after the entry of the decree, or earlier if either party obtained full-time employment or had an increase in income.

Paul and Ann agreed in the stipulation that Paul would pay Ann $1,100 per month for child support, an amount which the parties explicitly acknowledged in the stipulation was less than Ann would have received under the Nebraska Child Support Guidelines if she had primary physical custody of both children, but more than if the joint physical custody worksheet contained in the guidelines had been used. Paul and Ann agreed that they would divide the cost of child care necessitated by their respective employment on a pro rata basis based upon each party's income. In addition, the parties agreed, inter alia, that Paul and Ann would share all costs for the children's activities and that Paul would pay for tuition and uniforms for each child to attend a Catholic school from kindergarten through the eighth grade, so long as Paul's annual gross income exceeded $100,000. The stipulation and decree contained an expressly nonmodifiable provision for alimony paid by Paul to Ann in the amount of $350 per month for 36 months.

Less than 2 weeks after the decree was entered, Ann commenced employment with First Data Resources at an annual salary of $58,000. Paul accepted a position shortly thereafter

with Interactive Medicine as an independent contractor at an annual compensation of $120,000.

Ann filed a petition to modify the decree on July 9, 1997. In her petition, she requested modification of custody designating her as the children's sole legal and physical custodian and increased child support from Paul. In his responsive pleading, Paul affirmatively alleged that he regularly had the children in his physical custody for substantial amounts of time, in accordance with the decree, and denied that a material change in circumstances had occurred to justify either a modification of custody or an increase in his child support obligation. Paul cross-petitioned to reduce his child support obligation and eliminate his alimony payments to Ann. In her answer and reply to Paul's allegations, Ann did not specifically dispute the amount of time the children were in Paul's physical custody. At the modification trial, Ann admitted that Paul correctly represented the fact of his physical custody of the children at approximately 40 percent of the time, as had been specified by the stipulation and decree.

The parties' respective motions for modification were tried on January 13, 1998. In support of her request to increase Paul's child support obligation, Ann introduced calculations into evidence based on the sole custody worksheet contained in the guidelines. Ann's worksheet did not contain copies of her tax returns to document her income as required by paragraph D of the guidelines. Ann did, however, provide the court with current pay stubs reflecting employment compensation. Ann offered no documentation regarding Paul's income. According to Ann's sole custody calculations, she and Paul had a combined net monthly income of $9,751.79. Ann argued that Paul's child support payments should be increased to $1,292.85 per month and that this amount should be in addition to preexisting obligations created in the decree for child care, school activities, and educational costs.

The child support calculations which Paul offered at trial were based on the joint custody worksheet contained in the guidelines. On his worksheet, Paul claimed that the parties' combined net monthly income was $8,741.53. Paul's child support worksheet contained no pay stubs, tax records, or other independent documentation of his income or Ann's income as

required by paragraph D of the guidelines. Paul testified that his gross receipts from Interactive Medicine were $10,000 per month as reflected on his worksheet, a figure which Ann did not dispute. Paul introduced exhibit 17 into evidence, a letter from Interactive Medicine stating that Interactive Medicine considered Paul an independent contractor and that Interactive Medicine neither paid nor contributed to the payment of any employment tax for which Paul was legally liable due to the monies Paul received from the company. Paul testified that he paid a self-employment tax, which was treated as a deduction on his child support worksheet. As an independent contractor, Paul paid an amount essentially equivalent to the entire sum of contributions required by the Federal Insurance Contributions Act (FICA). Paul asserted that his self-employment taxes were therefore substantially greater than the employee's portion of FICA would have been if Interactive Medicine treated him as an employee and contributed the employer's portion of sums due under FICA.

Trial evidence offered by Paul and by Ann regarding the amount of time each parent had the children in his or her physical custody differed only slightly from the stipulated physical custody arrangements which the trial court had approved in the original decree of dissolution in March 1997. Undisputed evidence at the modification trial established that the children were in Paul's physical custody 38 to 40 percent of the time and that they spent approximately 60 to 62 percent of their time in Ann's physical custody. Paul and Ann each testified that he or she believed the other to be a good parent.

At the conclusion of the modification trial, the trial court orally announced from the bench its findings regarding child custody and alimony and subsequently memorialized those findings as well as additional findings regarding child support in a written order filed June 15, 1998. In both its oral pronouncement and written order, the trial court denied Ann's request to modify custody of the children, leaving intact the terms of the original decree granting Paul and Ann joint legal custody of their children, with alternating physical custody. In an oral colloquy at the end of trial, as well as in its written order, the court also denied Paul's request to eliminate his alimony payments to Ann.

As to the parties' respective motions to modify child support, the trial court made no comment in its oral pronouncement. In its written order, the trial court modified the support previously ordered. Notwithstanding its determination that the parties should continue joint legal custody, the trial court relied on Ann's sole custody worksheet support calculation and determined that Paul's monthly child support obligation, according to the guidelines, was $1,292.85 per month. In its written order, the trial court stated as its sole explanation for deviation that it would reduce that amount to $950 per month "to accommodate the substantial amounts of time the children spend with Respondent [Paul]." The court's written order did not include a reason for the court's reliance on the sole custody worksheet rather than the joint custody worksheet or further elaboration on the deviation therefrom. The record does not contain a separate worksheet utilized by the trial court quantifying its means and method justifying an amount of child support or a deviation from what the court had determined was otherwise the proper amount of monthly support under the guidelines.

With respect to the FICA issue, the trial court made no comment from the bench, and the trial court's written order was also silent.

Neither the trial court's oral or written orders effected changes upon Paul's obligations for educational and activity expenses for the children, and the court also left undisturbed the provisions of the decree pertaining to division of child-care costs.

Paul appeals.

### III. ASSIGNMENTS OF ERROR

Paul claims, restated, that the trial court erred in failing to deduct from his gross income the entire amount of the self-employment tax he paid as an independent contractor to arrive at Paul's net income available for child support. Paul also claims that the trial court erred in failing to utilize worksheet 3, the joint custody child support worksheet provided in the guidelines, to calculate the child support obligation in this case.

### IV. STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is

reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts over another. *Id.*

■ On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower court. *Gallner v. Gallner, ante* p. 158, 595 N.W.2d 904 (1999).

## V. ANALYSIS

### 1. DEDUCTIBILITY OF SELF-EMPLOYMENT TAXES

Paul claims that in connection with the calculation of child support, he was entitled to a deduction from gross income for the entire amount of self-employment taxes he was obliged to pay as an independent contractor. Although the trial court did not explicitly rule on Paul's self-employment tax contention, by its adoption of Ann's calculation which did not show Paul's actual self-employment tax obligation, we understand the trial court's order to be an implicit rejection of Paul's argument.

Paragraph E of the guidelines provides, in pertinent part: "**Deductions.** The following deductions should be annualized to arrive at monthly net income: . . . 2. **FICA.** Social security deductions, or any other mandatory contributions in lieu of social security deductions." FICA contributions or a mandatory contribution in lieu of Social Security are deductible for Nebraska Child Support Guidelines purposes. The self-employment tax is for the most part in lieu of Social Security. See 33 Am. Jur. 2d *Federal Taxation* § 620 (1999). In a conventional employer-employee relationship, an employer withholds and deposits the employee's portion of the taxes, and the employer must also pay an employer's contribution in a matching amount for the benefit of the employee. See, e.g., Internal Revenue Service, U.S. Dept. of Treasury, Pub. No. 15, Circular E, Employer's Tax Guide (1999). A self-employed person is liable

for self-employment taxes in an amount roughly equivalent to the employee's and employer's contributions in a conventional employment relationship, subject to FICA. See, 26 U.S.C. § 1401 (1994); 33 Am. Jur. 2d, *supra.*

■ Paragraph E of the guidelines provides that a FICA or Social Security payment deducted from a parent's gross monthly wages, or other mandatory contribution made in lieu thereof, should be deducted from the parent's gross monthly income in calculating net income available for child support. Neither paragraph E nor any other provision of the guidelines limits the amount of contributions which may be deducted from a parent's gross income in calculating child support pursuant to paragraph E. Accordingly, we conclude that where the evidence establishes that a self-employed parent pays self-employment taxes, such payments are available to that parent as a deduction under paragraph E.

In other jurisdictions, the cases or guidelines provide that if a parent introduces evidence that establishes that he or she has paid both the employee and employer portions of mandatory FICA contributions, other mandatory payments made in lieu thereof, or self-employment taxes, the entire sum paid by the parent may be properly deducted from gross income to arrive at net income for purposes of calculating child support. See, e.g., *Borowenski v. Borowenski*, No. CN95-10296, 1997 WL 878437 (Del. Fam. Sept. 22, 1997); *In re Marriage of Anderson*, 400 N.W.2d 84 (Iowa App. 1986); *Marriage of Gainey*, 89 Wash. App. 269, 948 P.2d 865 (1997).

■ A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification and which was not contemplated when the prior order was entered. *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999). Evidence of a material change in circumstances warranting modification must be proved at trial and contained in the record on appeal. *Swenson v. Swenson*, 254 Neb. 242, 575 N.W.2d 612 (1998). At trial, Paul introduced exhibit 17, which established that Interactive Medicine treated Paul as an independent contractor. Paul's testimony was in accord with exhibit 17. At the time of trial, Paul had been associated with Interactive Medicine

for under a year and income tax returns for the calendar year 1997 were not yet due. Notwithstanding paragraph D of the guidelines, given the foregoing timing of relevant events, Paul adequately established that he was entitled to the self-employment tax deduction, and the trial court's implicit rejection of Paul's claim was error.

## 2. TRIAL COURT'S USE OF SOLE CUSTODY WORKSHEET TO CALCULATE SUPPORT IN JOINT CUSTODY CASE

In the original decree of dissolution, the trial court approved the parties' stipulation whereby Paul had physical custody of the children approximately 40 percent of the time and Ann had physical custody the remainder of the time, and the court awarded Paul and Ann "joint legal custody" of both of their children. As noted above, at trial on the parties' respective motions for modification, Paul presented uncontroverted evidence that he had physical custody of both children 38 to 40 percent of the time, and he requested that the trial court calculate child support using worksheet 3, the joint custody worksheet included in the guidelines. The trial court failed to do so and instead adopted child support figures based on Ann's sole custody worksheet and deviated therefrom, stating in the written order that the deviation was "to accommodate the substantial amounts of time the children spend with Respondent [Paul]." On appeal, Paul claims that he presented sufficient evidence to prove that he had both joint legal and joint physical custody of his children and that the trial court erred in failing to use a joint physical custody formula to calculate Paul's child support obligation. We agree.

### (a) Definitions of Joint Legal Custody and Joint Physical Custody

Neb. Rev. Stat. § 42-364(5) (Reissue 1998) allows a trial court to order shared or joint custody of minor children when, inter alia, both parents agree to such an arrangement and "[i]n that event, each parent shall have equal rights to make decisions in the best interests of the minor child in his or her custody." Section 42-364(5) does not define "joint custody" as either legal or physical joint custody, nor do other Nebraska statutes.

Many, if not most, states that have defined joint custody differentiate between joint legal custody and joint physical custody. In *Pascale v. Pascale*, 140 N.J. 583, 595-96, 660 A.2d 485, 491 (1995), the New Jersey Supreme Court noted:

> In common parlance, the term "joint custody" can mean the sharing of both physical and legal custody of children, or the sharing of legal custody, but not physical or residential custody, between divorced parents. . . . Therefore, we reaffirm that "[p]roperly analyzed, joint custody is comprised of two elements—legal custody and physical custody," and find it important to break down the term "joint custody" into legal and physical custody in reviewing a court's determination of child support.

Quoting *Beck v. Beck*, 86 N.J. 480, 432 A.2d 63 (1981). See, also, *Van Driel v. Van Driel*, 525 N.W.2d 37 (S.D. 1994).

Joint legal custody has been generally defined as joint " 'authority and responsibility for making "major" decisions regarding the child's welfare,' " *Pascale v. Pascale*, 140 N.J. at 596, 660 A.2d at 491. See, also, *State of Cal. ex rel. Struck v. Struck*, 526 N.W.2d 500 (S.D. 1995). In contrast, joint physical custody has been described as "joint 'responsib[ility] for "minor" day-to-day decisions' and the exertion of continuous physical custody by both parents over a child for significant periods of time." *Pascale v. Pascale*, 140 N.J. at 596, 660 A.2d at 491-92, relying on *Beck v. Beck, supra.* Some states numerically quantify, by statute or by case law, the amount of time a child spends in the custody of a parent in order to determine if there is joint physical custody. See, *Wright v. Gregorio*, 855 P.2d 772 (Alaska 1993); *Gomez v. Gomez*, 119 N.M. 755, 895 P.2d 277 (1995); *Southwell and Spettel*, 119 Or. App. 366, 851 P.2d 599 (1993); *Udy v. Udy*, 893 P.2d 1097 (Utah App. 1995); *Ewing v. Ewing*, 21 Va. App. 34, 461 S.E.2d 417 (1995); *Cranston v. Cranston*, 879 P.2d 345 (Wyo. 1994).

In the instant case, the decree provided that Paul and Ann each had "joint legal custody" of both of their children, but neither party was designated primary physical custodian of the children. Ann admitted that since the entry of the decree, Paul physically had the children in his care 38 to 40 percent of the time, and she did not dispute that he provided them with all

aspects of their daily needs including shelter, clothing, food, toys, and emotional care during those periods. Other courts have held that if trial evidence establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement, and we agree with this approach. See, *Tweeton v. Tweeton*, 560 N.W.2d 746 (Minn. App. 1997); *Grage and Grage*, 128 Or. App. 409, 876 P.2d 350 (1994); *State of Cal. ex rel. Struck v. Struck, supra*; *Udy v. Udy, supra*. Accordingly, on this record, we determine that Paul proved that in addition to joint legal custody, he shared joint physical custody of both children with Ann.

(b) Use of Joint Physical Custody Worksheet

Ann offered the trial court a sole custody child support calculation using worksheet 1 from the guidelines. Paul offered a joint physical custody child support calculation using worksheet 3 from the guidelines. The trial court used Ann's sole custody worksheet and found that Paul's monthly support obligation according to the sole custody guidelines should be approximately $1,292.85 per month, and reduced this monthly amount to $950.

Paragraph L of the guidelines, entitled "Joint Physical Custody," provides in its entirety as follows: "When a specific provision for joint physical custody is ordered, support may be calculated using worksheet 3." Paul claims that because he established that he shared joint physical custody of his children with Ann, the trial court erroneously failed to use worksheet 3 to calculate child support, and that the use of the joint physical custody worksheet would yield a lower child support award. In response, Ann argues that the term "may" in paragraph L indicates that use of the joint physical custody worksheet is permissive or discretionary unless such construction would be inconsistent with the manifest legislative intent. See *State ex rel. Fick v. Miller*, 255 Neb. 387, 584 N.W.2d 809 (1998).

Pursuant to paragraph A of the guidelines, the purpose of the guidelines is "to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes" and, as stated in paragraph C of the guidelines, to do so in a way that is not unjust or inappropriate.

Paragraph L, referring the court and parties to the use of worksheet 3 in cases of joint physical custody, is but one section of the guidelines. Components of a series or collection of provisions pertaining to the same subject matter which are in pari materia may be conjunctively considered so that different provisions are consistent, harmonious, and sensible. See, e.g., *Willers v. Willers*, 255 Neb. 769, 587 N.W.2d 390 (1998) (conjunctively construing statutes regarding child support). Where possible, effect should be given to all provisions of a statute or regulation. *Cox Cable of Omaha v. Nebraska Dept. of Revenue*, 254 Neb. 598, 578 N.W.2d 423 (1998). Taking all the guidelines and worksheets together, it is clear that the most appropriate worksheet to be used in a case of joint physical custody is worksheet 3, which is designed for that purpose. Accordingly, trial courts are directed to employ worksheet 3 in cases of joint physical custody unless a sound reason not to do so is established by the record, in which case the trial court shall indicate in the findings portion of the child support decree or order or on worksheet 5 the reason why worksheet 3 was not used.

Courts in other jurisdictions have held that where a party proves that joint physical child custody exists, it is error for a trial court to refuse to apply a joint custody calculation to determine child support. See, e.g., *Wright v. Gregorio*, 855 P.2d 772 (Alaska 1993); *Gomez v. Gomez*, 119 N.M. 755, 895 P.2d 277 (N.M. App. 1995); *Grage and Grage*, 128 Or. App. 409, 876 P.2d 350 (1994); *Udy v. Udy*, 893 P.2d 1097 (Utah App. 1995); *Pharo v. Pharo*, 19 Va. App. 236, 450 S.E.2d 183 (1994). We agree and determine that using the joint custody worksheet, where it is justified by a proven joint physical custody arrangement, facilitates the trial court's determination of an appropriate amount of child support commensurate with each parent's income according to the guidelines. In addition, the court may still deviate from the guidelines' amount of support if trial proof demonstrates that such deviation is appropriate and supported by competent evidence. See Nebraska Child Support Guidelines, paragraph C. See, also, *DeTevis v. Aragon*, 104 N.M. 793, 727 P.2d 558 (N.M. App. 1986) (holding that joint physical custody does not necessarily imply equal division of

financial responsibility for children's welfare, particularly when financial circumstances of parents are disparate).

In this case, joint physical custody was established and the trial court rejected Ann's request to modify joint custody to sole custody awarded to her. Under these facts, it was incongruous for the trial court to use the sole custody worksheet submitted by Ann as the basis for its child support order rather than the joint custody worksheet. The trial court erred in failing to use the guidelines' joint custody worksheet 3 to calculate Paul's child support obligation. This error amounted to an abuse of discretion because, although the evidence overall is thin, given the undisputed gross incomes of the parties and the undisputed percentages of the parties' physical custody of the children, the use of the joint physical custody worksheet as compared to the sole custody worksheet would have yielded a significantly different child support order entered against Paul.

Based on the foregoing, we reverse the trial court's order modifying Paul's child support obligation and remand the cause to the trial court for a rehearing that includes the receipt of evidence to permit calculation of child support using the guidelines' joint custody worksheet. Because the best interests of the children are controlling in matters involving child support, see § 42-364 and *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991), and of necessity, there needs to be a child support order made in this case, our direction provides for the receipt of additional evidence upon remand.

Upon remand, the trial court is reminded that deviations are to be ordered with explicitness. As noted above, the trial court relied on the sole custody support worksheet proffered by Ann to determine support, did not supply its own worksheet, and deviated downward with a brief comment.

Neb. Rev. Stat. § 42-364.16 (Reissue 1998) provides that support shall be set following the guidelines unless a basis for deviation is established. See, also, *Bondi v. Bondi*, 255 Neb. 319, 586 N.W.2d 145 (1998). Paragraph C of the guidelines provides, in pertinent part:

> All orders for child support obligations shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced

sufficient evidence to rebut the presumption that the guidelines should be applied. All stipulated agreements for child support must be reviewed against the guidelines and, if a deviation exists and is approved by the court, specific findings giving the reason for the deviation *must* be made. Findings must state the amount of support that would have been required under the guidelines and include a justification of why the order varies from the guidelines. . . . In the event of a deviation, the reason for the deviation shall be contained in the findings portion of the decree or order; or worksheet 5 should be completed by the court and filed in the court file.

(Emphasis supplied.)

In *Baratta v. Baratta*, 245 Neb. 103, 105, 511 N.W.2d 104, 105 (1994), this court stated that "it would be extremely helpful to the reviewing court if the trial judge somehow would incorporate into the record his or her worksheet which was employed in arriving at a child support amount." We observe that the absence of explanations for deviations exists both in appeals from initial dissolution decrees, see *McCall v. McCall*, 1 Neb. App. 373, 496 N.W.2d 8 (1992), and in appeals in modification cases, see *Lebrato v. Lebrato*, 3 Neb. App. 505, 529 N.W.2d 90 (1995). Recently, in *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999), we reiterated the mandate of paragraph C of the guidelines that the trial court explain in the findings portion of its order the basis for the court's deviation from the guidelines, if any, in calculating support or, alternatively, to complete and file worksheet 5. We repeat this admonition.

## VI. CONCLUSION

We conclude that for child support calculation purposes a self-employed parent may deduct self-employment taxes. We further determine that the evidence in this case established that Paul and Ann share joint physical custody of their children and that the trial court erred in failing to use the joint custody worksheet. We remand the cause to the trial court for recalculation of child support consistent with this opinion and the guidelines and consistent with the evidence to be introduced at a rehearing of this matter.

REVERSED AND REMANDED WITH DIRECTIONS.