Jessica Freeman, appellee and cross-appellant,
v. Michael L. Groskopf, appellant
and cross-appellee.
___ N.W.2d ___

Filed October 25, 2013.    No. S-12-996.

1. **Modification of Decree: Child Support: Appeal and Error.** Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, an appellate court will affirm the trial court's decision absent an abuse of discretion.

2. **Child Support: Appeal and Error.** Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and an appellate court will affirm its decision absent an abuse of discretion.

3. **Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Modification of Decree: Child Support: Proof.** A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.

5. **Modification of Decree: Child Support**. Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent.

6. **Rules of the Supreme Court: Child Support.** In general, child support payments should be set according to the Nebraska Child Support Guidelines.

7. **Child Support.** Use of earning capacity to calculate child support is useful when it appears that the parent is capable of earning more income than is presently being earned.

8. **Modification of Decree: Child Support: Time.** Absent equities to the contrary, child support modifications should generally apply retroactively to the first day of the month following the complaint's filing.

9. **Child Support.** In the absence of a showing of bad faith, it is an abuse of discretion for a court to award retroactive support when the evidence shows the obligated parent does not have the ability to pay the retroactive support and still meet current obligations.

Appeal from the District Court for Sarpy County: Max Kelch, Judge. Affirmed.

Benjamin E. Maxell, of Adams & Sullivan, P.C., L.L.O., for appellant.

Christopher Perrone, of Perrone Law, and Ryan D. Caldwell, of Caldwell Law, L.L.C., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CONNOLLY, J.

Jessica Freeman filed a complaint to modify Michael L. Groskopf's child support, which the district court granted. Groskopf argues that the court erred in finding a material change in circumstances and in setting his earning capacity at $15.23 per hour, 40 hours per week. On cross-appeal, Freeman argues that the court erred in not applying the modification retroactively and in not requiring Groskopf to also contribute toward childcare expenses.

## BACKGROUND

### PROCEDURAL HISTORY

This case began with Freeman's April 2009 complaint against Groskopf to establish paternity, custody, and support of her child. Based on genetic testing, the court found that Groskopf was the child's father. The court then awarded sole custody to Freeman (subject to a parenting plan) and ordered Groskopf to pay $1,062.48 in monthly child support. The decree also addressed other issues, such as the child's health insurance and childcare expenses.

Groskopf filed a "Motion to Set Aside Default Judgment, File Answer Out of Time, and Modify Temporary Order," which the court treated as a request to modify child support. The record shows that Groskopf wanted to lower his child support because, among other reasons, he had entered automotive school full time and had no income. In its order, the court concluded that there had been a material change in circumstances, but that the child still required support. So the court calculated a lower child support amount based on Groskopf's earning capacity, which the court found to be $7.25 per hour, 40 hours per week. This resulted in an obligation of $256 per month.

The court did not require Groskopf to pay health care or child-care expenses because it would have brought him below the basic subsistence limitation.[1]

In February 2012, Freeman filed a complaint to modify Groskopf's child support obligation. She alleged that there had been a material change in circumstances warranting an increase in child support. She also requested that the court order Groskopf to contribute toward the child's health care and childcare costs. The trial occurred in September and covered not only the request for modification but also whether Groskopf was in contempt for not complying with earlier court orders. There are no issues on appeal related to the contempt proceedings.

TRIAL

Freeman, Groskopf, and Groskopf's father all testified at trial. Regarding the modification issue, Freeman generally testified that she believed Groskopf could pay more child support because he had graduated from automotive school and was able to work. For the same reasons, she testified that she thought she deserved help in paying the child's health care and childcare expenses. She then outlined her own current income, expenses, and job situation, and requested that the court make any order retroactive to the date she filed her complaint.

Groskopf testified that he had graduated from automotive school in December 2010 but could not find a job in that field. He testified that he took a summer seasonal job in 2010, paying $8.50 per hour, and then began volunteering at a police department until the spring of 2011 because he became interested in a career in law enforcement. He eventually gave up on that career path and found a full-time job with Butler Machinery Company (Butler Machine) in June 2012 which paid $15.23 per hour. After a few months, however, Groskopf entered a 2-year internship, sponsored by Butler Machine, in which he would alternate every 2 months between full-time schooling (diesel technology) and full-time paid work. As for his living

---

[1] See Neb. Ct. R. § 4-218 (rev. 2012).

expenses, and his current child support, he testified that his father paid for everything. His father confirmed this during his testimony.

## COURT ORDER

The court increased Groskopf's child support based on an earning capacity of $15.23 per hour, 40 hours per week. The court generally found that there had been a material change in circumstances—Groskopf's graduation and earlier full-time employment at Butler Machine—and that Groskopf had acted in bad faith in failing to provide for his child. The court noted, "Any person who seeks further education to improve his/her circumstances would normally be viewed in a positive manner, but at some point, those decisions must be balanced against the best interest of the minor child."

The court reasoned further:

> In determining the equities in this case, this Court notes that [Groskopf] had gained full-time employment, earning $15.23 per hour, but voluntarily chose to reduce those earnings, which was not in the best interest of his child . . . ; that [he] made this same argument in 2010 to justify reducing his child support; that [he] continually changes his career field by returning to school and not fully supporting his child; that but for [his] father paying the child support, [he] has made no efforts, himself, to financially support his child; and that [he] never addressed how his minor child would be financially supported or expressed any concern about that issue. The facts of this case appear to be a situation where [Groskopf's] change in financial condition is due to fault or voluntary wastage or dissipation of one's talents and assets, and not made in good faith.

Based on the $15.23-per-hour figure, the court increased Groskopf's child support to $577 per month and also required him to contribute toward the child's health care expenses. The court did not address the child's childcare expenses. But despite finding that Groskopf had acted in bad faith, the court declined to make the modification retroactive:

[A]lthough this Court has found that [Groskopf's] actions were not made in good faith, the reality is that any retroactive application of the increased child support would only result in an immediate arrearage. This Court finds that good cause is shown, in that, [Groskopf] should use this opinion as an incentive to gain full time employment, and financially support his minor child, as required by the laws of Nebraska.

## ASSIGNMENTS OF ERROR

Groskopf assigns, restated and consolidated, that the court erred in finding (1) a material change in circumstances, and thereafter modifying his child support, because Groskopf remained enrolled in school full time and had no actual income and (2) his earning capacity to be $15.23 per hour, 40 hours per week.

On cross-appeal, Freeman assigns, restated, that the court erred in (1) not applying the modification retroactively and (2) not requiring Groskopf to contribute toward the child's child-care expenses.

## STANDARD OF REVIEW

[1,2] Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, we will affirm the trial court's decision absent an abuse of discretion.[2] Whether a child support order should be retroactive is also entrusted to the discretion of the trial court, and we will affirm its decision absent an abuse of discretion.[3]

[3] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed

[2] See *Gase v. Gase*, 266 Neb. 975, 671 N.W.2d 223 (2003).

[3] See, e.g., *Emery v. Moffett*, 269 Neb. 867, 697 N.W.2d 249 (2005).

the witnesses and accepted one version of the facts rather than another.[4]

## ANALYSIS

### MATERIAL CHANGE IN CIRCUMSTANCES

Groskopf argues that the district court erred in finding a material change in circumstances. Specifically, Groskopf argues that because his "schooling and employment status had not changed . . . it is inconceivable that a material change in circumstances could have occurred."[5] Groskopf also argues, based on *Collins v. Collins*,[6] that any change in circumstances was only temporary and did not exist at the time of trial. As such, Groskopf argues that there was no material change in circumstances and therefore no basis to modify his child support obligation.

[4] "A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered."[7] The Nebraska Child Support Guidelines establish a rebuttable presumption of a material change in circumstances when application of the guidelines "would result in a variation by 10 percent or more, but not less than $25, upward or downward, of the current child support obligation . . . due to financial circumstances which have lasted 3 months and can reasonably be expected to last an additional 6 months."[8]

Applying the guidelines here, the district court increased Groskopf's child support obligation from $256 per month to $577 per month, which is "a variation by 10 percent or more, but not less than $25, upward." And that increase was "due to financial circumstances which [had] lasted 3 months and [could] reasonably be expected to last an additional

---

[4] See *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999).

[5] Brief for appellant at 11.

[6] *Collins v. Collins*, 19 Neb. App. 529, 808 N.W.2d 905 (2012).

[7] *Incontro v. Jacobs*, 277 Neb. 275, 281, 761 N.W.2d 551, 557 (2009).

[8] Neb. Ct. R. § 4-217.

6 months"; namely, Groskopf's increased earning capacity, which, as will be seen below, the court appropriately set and used. As such, there was a rebuttable presumption that there had been a material change in circumstances warranting modification.

[5] Groskopf has not rebutted that presumption.

> Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent.[9]

Here, the record shows that Groskopf's financial position had changed from the court's previous order, in that he had graduated from automotive school (his attendance there was a primary reason for the earlier downward modification) and that he had obtained full-time employment with Butler Machine working for $15.23 per hour. Granted, Groskopf had then entered another program alternating every 2 months between full-time school and full-time paid work, but his graduation and job at Butler Machine were evidence of his earning capacity, which was much higher than the minimum wage used to calculate his prior child support obligation. And this change—his increased earning capacity—was not temporary, because he had earned his degree and demonstrated his ability to work for that $15.23-per-hour wage. The district court also found that Groskopf's actions were in bad faith because Groskopf continually changed his career and education paths without thought as to the needs of his child. Under these circumstances, we conclude that a material change in circumstances had occurred and that the court did not err in modifying Groskopf's child support obligation.

Groskopf's reliance on *Collins* to argue otherwise is misplaced. In *Collins*, and as relevant to this issue, the Nebraska Court of Appeals held that "the change in circumstances

---

[9] *Incontro, supra* note 7, 277 Neb. at 282-83, 761 N.W.2d at 558. See, also, *Rhoades v. Rhoades*, 258 Neb. 721, 605 N.W.2d 454 (2000).

justifying a modification of child support must exist at the time of trial."[10] The Court of Appeals reasoned that the change must exist at the time of trial "because the court's decision to modify child support must be based upon the evidence presented in support of the complaint to modify" and "because the change in circumstances cannot be temporary."[11] We agree with the Court of Appeals, but that does not help Groskopf. Here, the change in circumstances was Groskopf's increased earning capacity (along with his acting in bad faith), which existed at the time of trial and which was not temporary. This assigned error has no merit.

## EARNING CAPACITY

Next, Groskopf argues that the court erred in finding his earning capacity to be $15.23 per hour, 40 hours per week. Specifically, Groskopf argues that that figure is inappropriate and excessive because he is enrolled full time in school and does not have a regular source of income and because he no longer has his job at Butler Machine, which job was the basis for the $15.23-per-hour figure.

[6,7] In general, child support payments should be set according to the Nebraska Child Support Guidelines.[12] The guidelines provide that "[i]f applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources."[13] Use of earning capacity to calculate child support is useful "when it appears that the parent is capable of earning more income than is presently being earned."[14]

Groskopf takes issue with the $15.23-per-hour figure, which was Groskopf's rate of pay while working full time at Butler

---

[10] *Collins*, *supra* note 6, 19 Neb. App. at 535, 808 N.W.2d at 911.

[11] *Id*.

[12] See *Incontro*, *supra* note 7.

[13] Neb. Ct. R. § 4-204. See, also, *Incontro, supra* note 7.

[14] *Rauch*, *supra* note 4, 256 Neb. at 264, 590 N.W.2d at 175.

Machine. We disagree with Groskopf's contention that that fig-
ure is inappropriate or excessive because he is now currently
without a steady stream of income. Earning capacity looks at
what the obligated parent is capable of earning, rather than at
his or her current income[15] and, indeed, is used "in lieu of . . .
actual, present income."[16]

Nor are we persuaded that the $15.23-per-hour figure is
inappropriate or excessive because Groskopf is enrolled full
time in school and no longer works at Butler Machine. The
record shows that Groskopf voluntarily left Butler Machine for
additional schooling and that had he not done so, he could have
continued working there. It thus appears that Groskopf left
Butler Machine "due to his own personal wishes, and not as
a result of unfavorable or adverse conditions in the economy,
his health, or other circumstances that would affect [his] earn-
ing capacity."[17] In other words, Groskopf is capable of earning
$15.23 per hour, 40 hours per week, but he chooses not to.
Based on our de novo review of the record, we conclude that
the $15.23-per-hour figure was neither inappropriate nor exces-
sive, but was instead supported by the record and properly used
to calculate Groskopf's child support obligation.

### Retroactive Modification

On cross-appeal, Freeman argues that the district court erred
in failing to make the modification retroactive. Freeman empha-
sizes that the court found that Groskopf acted in bad faith, that
Groskopf failed to show an inability to pay the arrearage if the
order were made retroactive, and that Freeman has been work-
ing full time (with an additional seasonal job) while also going
to school full time. In short, Freeman argues that the equities
of this case require applying the modification retroactively and
that the court abused its discretion in not doing so.

[8,9] We have stated that absent equities to the contrary, child
support modifications should generally apply retroactively to

---

[15] See *id.*

[16] § 4-204.

[17] See *Incontro, supra* note 7, 277 Neb. at 285, 761 N.W.2d at 559-60.

the first day of the month following the complaint's filing.[18] We have also stated that in determining whether to apply a modification retroactively, the ability to pay is an important factor.[19] And in *Wilkins v. Wilkins*,[20] we cited with approval *Cooper v. Cooper*,[21] in which the Court of Appeals stated that "in the absence of a showing of bad faith, it is an abuse of discretion for a court to award retroactive child support when the evidence shows the obligated parent does not have the ability to pay the retroactive support and still meet current obligations."[22]

Here, the district court explicitly found that Groskopf had acted in bad faith and, from our reading of the order, implicitly found that Groskopf did not have the ability to pay any retroactive arrearage while maintaining his current obligations. The court's findings in that respect bear repeating:

> [A]lthough this Court has found that [Groskopf's] actions were not made in good faith, the reality is that any retroactive application of the increased child support would only result in an immediate arrearage. This Court finds that good cause is shown, in that, [Groskopf] should use this opinion as an incentive to gain full time employment, and financially support his minor child, as required by the laws of Nebraska.

As noted at oral argument, although we have concluded that in the absence of bad faith, it is an abuse of discretion to retroactively apply the modification when the obligated parent does not have the ability to pay, we have never held the converse. In other words, we have never held that where there is bad faith and an inability to pay, the trial court *must* make the modification retroactive. And we decline to do so here; instead, in such circumstances, the decision still remains within the court's discretion.

---

[18] See, e.g., *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002).

[19] See *Wilkins v. Wilkins*, 269 Neb. 937, 697 N.W.2d 280 (2005).

[20] *Id*.

[21] *Cooper v. Cooper*, 8 Neb. App. 532, 598 N.W.2d 474 (1999).

[22] *Id*. at 538, 598 N.W.2d at 478.

Based on the record, we cannot say the trial court abused its discretion in failing to make the modification retroactive. A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.[23] Those factors are not present here. There is some evidence to support the court's conclusion that Groskopf would be unable to pay the retroactive support while maintaining his current obligations. Notably, too, the primary basis for determining Groskopf's earning capacity—his job at Butler Machine—did not come into being until June 2012. Thus, it would seem odd to apply the modification retroactively to March 2012 (the month after the complaint's filing),[24] when the primary basis for determining the new child support obligation did not exist at that time. We find no abuse of discretion on this issue.

## Childcare Expenses

Also on cross-appeal, Freeman argues that the district court erred in failing to order Groskopf to contribute toward childcare expenses. Freeman argues that the child support guidelines require Groskopf to contribute toward childcare expenses when, as here, the expenses are incurred due to a parent's employment or to allow a parent to pursue necessary training or education.[25] And Freeman argues that because Groskopf's child support obligation is now based on his higher earning capacity, assessing childcare expenses against him would no longer bring him below the basic subsistence limitation.[26]

Although we generally agree with the premise of Freeman's argument, the record shows only that Freeman has incurred some childcare expenses, but not their actual cost. The child

---

[23] See *Gase, supra* note 2.

[24] See, e.g., *Peter, supra* note 18.

[25] See Neb. Ct. R. § 4-214.

[26] See § 4-218.

support guidelines provide a court with some discretion as to the amount it orders an obligor to contribute toward childcare expenses.[27] Without knowing the actual cost of the childcare, it is nearly impossible for a court to exercise that discretion in an appropriate manner. The burden of proof is on the party seeking modification.[28] Because Freeman did not provide evidence of the actual cost of childcare, she failed to meet that burden. We therefore find no error in the district court's failure to order Groskopf to contribute toward childcare expenses.

## CONCLUSION

We affirm the district court's order in all respects. We agree that there was a material change in circumstances, that using earning capacity was appropriate, and that the earning capacity was set at an appropriate level. We also find no abuse of discretion in the court's refusal to make the modification retroactive. And because Freeman failed to adduce evidence of the actual cost of childcare expenses, we find no error in the district court's failure to order Groskopf to contribute toward childcare expenses.

AFFIRMED.

---

[27] See § 4-214.

[28] See, *Peter, supra* note 18; *Gartner v. Hume*, 12 Neb. App. 741, 686 N.W.2d 58 (2004).

CASSEL, J., concurring.

Although I agree with the result reached by the majority, I write separately because I do not find the facts of this case to be so readily distinguishable from the facts in *Collins v. Collins*.[1] The majority concludes that there was a material change in circumstances because Groskopf demonstrated his ability to work for a higher wage, and I agree with this conclusion. However, I similarly believe that the respondent in *Collins* demonstrated her ability to work for, at a minimum, the minimum-wage rate. I therefore am not convinced that the Nebraska Court of Appeals was correct in concluding that

---

[1] *Collins v. Collins*, 19 Neb. App. 529, 808 N.W.2d 905 (2012).

there was no material change in circumstances in that case. Nonetheless, because I agree with the majority's conclusion in the case before us, I concur.

———————

State of Nebraska, appellee, v.
Joshua D. Leibel, appellant.
___ N.W.2d ___

Filed October 25, 2013.    No. S-12-1047.

1.  **Appeal and Error.** An appellate court resolves questions of law and issues of statutory interpretation independently of the lower court's conclusion.
2.  **Constitutional Law: Witnesses: Appeal and Error.** An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and reviews the underlying factual determinations for clear error.
3.  **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
4.  **Judgments: Presumptions: Appeal and Error.** A judgment of the district court brought to an appellate court for review is supported by a presumption of correctness.
5.  **Judgments: Appeal and Error.** An appellant challenging a judgment of the district court brought to an appellate court for review must both assign and specifically argue any alleged error.
6.  **Constitutional Law: Trial: Hearsay.** Where testimonial statements are at issue, the Confrontation Clause demands that such out-of-court hearsay statements be admitted at trial only if the declarant is unavailable and there has been a prior opportunity for cross-examination.
7.  **Public Officers and Employees: Motor Vehicles: Records: Intent.** Although the employees who create driving records may reasonably believe the records will be available for some possible future prosecution, the sole purpose of creating driving records is not to create evidence for trials.
8.  **Records: Witnesses.** Because neutral, bureaucratic information from routinely maintained public records is not obtained by use of specialized methodology, there is little, if any, practical benefit to applying the crucible of cross-examination against those who maintain the information.
9.  **Constitutional Law: Trial: Witnesses: Appeal and Error.** The improper admission of statements in violation of the right to confrontation is a trial error subject to harmless error review.
10. **Constitutional Law: Trial: Proof: Appeal and Error.** Where the trial error is of a constitutional dimension, the burden must be on the beneficiary of the error to prove beyond a reasonable doubt that the error did not contribute to the verdict obtained.