IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


CALLEJA V. CALLEJA


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


JESSICA L. CALLEJA, APPELLANT,

V.

ANTHONY M. CALLEJA, APPELLEE.


Filed April 24, 2018.    No. A-17-868.


Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed.

Patrick McCormick for appellant.

John J. Maynard, of Chatelain & Maynard, for appellee.


MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Jessica L. Calleja appeals from a decree of the district court for Douglas County dissolving her marriage to Anthony M. Calleja. Jessica challenges the court's custody determination for the parties' children, the division of property, and the amount of child support Anthony was ordered to pay. Based on the reasons that follow, we affirm.

## BACKGROUND

Jessica and Anthony were married on December 31, 2007. Two children were born of the marriage--Ayden, born in 2006, and Ella, born in 2007. On June 2, 2015, Jessica filed a complaint for dissolution of marriage. Anthony filed an answer and counter-complaint for dissolution of marriage. On August 27, a temporary order for custody and allowances was entered granting Jessica temporary custody of the parties' children subject to parenting time by Anthony consisting of every Tuesday to Wednesday morning and every other weekend, Friday to Sunday. Anthony

- 1 -

was also ordered to pay child support in the amount of $869 per month commencing September 1, 2015.

On June 15, 2017, trial was held on Jessica's complaint and Anthony's counter-complaint. At the time of trial, Ayden was 11 years old and Ella was 10 years old.

The evidence showed that in May or June 2014, Anthony started his own tile installation business. Before starting his own business, Anthony worked for Omaha Tile and Granite. In 2013, Anthony earned $34,835. Jessica testified that Anthony made $18 an hour when he started at Omaha Tile and Granite, and was making $22 an hour when he left. He has a high school education. Anthony testified that he started his own business because he thought he could make more money than he did working for someone else, and because Jessica was not willing to work.

Based on the parties' joint tax returns for 2015 and 2016, Anthony had net business income before taxes of $23,381 and $31,261, respectively. Anthony testified that his net monthly income for 2016 was $1,949.26.

Jessica was not working at the time of trial, but testified that she was capable of working 40 hours per work and earning $10 per hour. She testified that Anthony has paid her between $2,000 and $3,000 in child support since the temporary order was entered. Anthony testified he had paid her at least $3,000. He admitted that he was over $16,000 in arrears on the temporary child support.

The parties were not following the parenting time schedule set forth in the temporary order. Jessica testified that in March 2016, she agreed to let Anthony have parenting time every Thursday to Friday morning, in addition to the Tuesday overnights. Jessica also testified that since March 2016, Anthony has been having parenting time every other weekend from Friday to Monday morning, rather than from Friday to Sunday evening as stated in the temporary order. However, Jessica acknowledged that in her answers to Anthony's interrogatories she stated that Anthony had been having parenting time "2 overnights a week[,] every other weekend[,] alternating holidays" since the filing of her complaint on June 2, 2015.

Anthony testified that before the temporary order was entered, he had been having the children every Tuesday and Thursday overnight, and every other weekend from Friday evening to Monday morning. He testified that he had additional time with the children if Jessica had something going on and she was going out of town.

The parties had mediated a partial parenting plan in which they agreed to joint legal custody, and also came to an agreement on parenting time for holidays and vacation time. Anthony asked the court to adopt the terms of the partial parenting plan and he presented his own proposed parenting plan covering issues not agreed upon in the partial parenting plan. He asked the court to award him the same parenting time that the parties had been following for nearly 2 years--every Tuesday and Thursday overnight and every other Friday to Monday. Anthony also presented two child support calculations as an aid to the court.

Anthony testified that he is an involved parent in his children's lives. He testified that he and the children did many indoor and outdoor activities together, such as going to skate parks, regular parks and basketball courts. He also testified that the children are involved in sports and he attends all of their events and takes them to practices during his parenting time. Anthony was also involved in the children's education. He attended parent/teacher conferences and helped with homework. The children are both doing well in school.

Anthony testified that his work schedule is flexible and allows him to take the children to school and pick them up after school during his parenting time.

At the time of trial, Jessica was living in the marital residence and Anthony was renting a two-bedroom apartment. The children were sharing a bedroom with bunk beds at Anthony's apartment. Jessica disliked that the children had to share a room, and Anthony testified that the children had complained about it. Anthony testified that there were no three bedroom apartments available at the time and cost was an issue. He also testified that he had a pull-out couch in the living that the children would take turns sleeping on.

The marital home was purchased by the parties in October 2012 for $125,000. Anthony presented evidence to show that the assessed value of the home for 2017, as determined by the Douglas County Assessor, was $130,000. As of September 16, 2016, the outstanding balance on the mortgage was $114,452.42. Based on the 2017 value and the mortgage balance as of September 2016, the amount of equity in the home was $15,547.58. Anthony asked the court to equally divide the equity.

Jessica testified that when Anthony moved out of the marital home in May 2015, they were 5 months behind on their mortgage payments. She testified that her aunt helped her make the back payments to get the house out of foreclosure and that she has made the mortgage payments herself since May 2015. Anthony admitted that he has not made a house payment since he moved out.

Jessica disagreed with the 2017 tax assessed value of the home because Anthony had started a bathroom remodel project in March 2014 that he never completed. She said the bathroom has a cracked bathtub and moldy drywall, and that these things would decrease the value of the home.

Following trial, the trial court entered a decree dissolving Jessica and Anthony's marriage and ordering that they have joint legal and physical custody of their children. The court found that the evidence demonstrated that the parties had been exercising a joint physical custody arrangement and that such an arrangement was in the children's best interests. The court adopted Anthony's proposed parenting plan which provided for the same parenting time arrangement that the parties had been following. The court also adopted a child support calculation submitted by Anthony and ordered Anthony to pay $100 per month in child support. In addition, the court found that the calculation submitted by Anthony accurately reflected a proper child support calculation during the period of the temporary order. Therefore, it found that child support under the temporary order should be recalculated and retroactively reduced to $100 per month commencing September 1, 2015. In regard to the marital home, the court awarded the home to Jessica and gave her 6 months to refinance the property solely in her name. It found that the equity in the home was $15,547.58 and ordered Jessica to pay Anthony one-half of the equity interest in the sum of $7,773.79.

## ASSIGNMENTS OF ERROR

Jessica assigns that the trial court erred in (1) awarding the parties joint physical custody of the children, (2) determining that Anthony's monthly income was $1,948.41, (3) awarding Anthony a one-half equity interest in the marital residence, and (4) making retroactive changes to Anthony's child support obligation in the temporary order.

STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.*

A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

ANALYSIS

*Joint Physical Custody.*

Jessica assigns that the trial court erred in awarding the parties joint physical custody of the children. When deciding custody issues, the court's paramount concern is the child's best interests. *Citta v. Facka,* 19 Neb. App. 736, 812 N.W.2d 917 (2012). Neb. Rev. Stat. § 43-2923 (Reissue 2016) states, in pertinent part:

> (6) In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:
>
> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;
>
> (d) Credible evidence of abuse inflicted on any family or household member . . . and
>
> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

Other pertinent factors include the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

Jessica argues that joint physical custody is not in the best interests of the children because the children had to share a bedroom at Anthony's apartment, there had been "logistical problems" with respect to transporting the children to school and activities, and Anthony had missed some of his parenting time. In regard to the children sharing a bedroom at Anthony's, he testified there were no three bedroom apartments available at the time and cost was an issue. Anthony had a pull-out couch in the living room that the children would take turns sleeping on. There was no indication that the apartment was not clean or not a suitable place for children. The only evidence of "logistical problems" was vague testimony by Jessica that the joint custody arrangement was

chaotic for the children and that both parties have missed out on events because of miscommunication.

Jessica also testified that there were times that Anthony missed his parenting time. However, Anthony testified that he had additional time with the children outside of his scheduled times when Jessica had something going on and needed him to take the children.

The evidence at trial supported the court's decision to award the parties joint physical custody. Although the temporary order awarded Jessica primary physical custody, the evidence showed that the parties had been exercising a joint physical custody arrangement for almost 2 years. Anthony testified that before the temporary order was entered, he had the children overnight every Tuesday and Thursday, and every other weekend from Friday evening to Monday morning. Jessica testified that it was not until March 2016 that Thursday nights were added to Anthony's parenting time and his weekends were extended to Monday. However, her testimony was inconsistent with her answers to interrogatories. Anthony's interrogatories asked Jessica to describe the actual parenting time schedule followed by the parties since the filing of her complaint in June 2015. She responded, "2 overnights a week[,] every other weekend[,] alternating holidays," indicating that the joint custody arrangement had been going on for 2 years.

The evidence also showed that Anthony had a flexible work schedule allowing him to take the children to school and pick them up at the end of the day during his parenting time. Anthony was also involved in the children's education and in their extracurricular activities. Both children were doing well in school under the joint physical custody arrangement.

We conclude that the trial court did not abuse its discretion in awarding the parties joint physical custody. This assignment of error is without merit.

*Anthony's Monthly Income.*

Jessica next assigns that the trial court erred in determining that Anthony's monthly income was $1,948.41 for child support calculation purposes. She argues that the court should have used Anthony's earning capacity, rather than his actual earnings. We first note that the court did not use $1,948.41 as Anthony's monthly income in the child support calculation. The court adopted one of the child support calculations presented by Anthony, specifically exhibit 18, attachment "B," which used $2,605.08 as Anthony's total monthly income, and resulted in Anthony paying Jessica $100 per month for child support. However, under the paragraph entitled "Temporary Orders" in the decree, the court mistakenly stated that "[Anthony] has a gross monthly income of $1,948.41/month," which was the amount used in Anthony's other proposed child calculation, which the court did not adopt.

The monthly income for Anthony used by the court to calculate child support, $2,605.08, was based on his 2016 tax return. Jessica argues that the court should have used his earning capacity based on wages he earned from Omaha Tile and Granite, rather than his actual income. She suggests that the court should have used $3,200 as Anthony's earning capacity, the same monthly income that was used in the temporary order.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). The guidelines provide that "[i]f applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities.

Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources." Neb. Ct. R. § 4-204. Use of earning capacity to calculate child support is useful when it appears that the parent is capable of earning more income than is presently being earned. *Freeman v. Groskopf, supra.*

A divorce decree does not require a parent to remain in the same employment and child support may be calculated based on actual income when a career change is made in good faith. *Claborn v. Claborn*, 267 Neb. 201, 673 N.W.2d 533 (2004). Changes in career or occupation which reduce the ability to provide child support are allowed, so long as they are made in good faith and future child support obligations should generally be based on present income and the Nebraska Child Support Guidelines. *Johnson v. Johnson*, 20 Neb. App. 895, 834 N.W.2d 812 (2013).

Anthony testified that he decided to start his own business because he was not making enough money working for someone else and he thought he could earn more income having his own business. He also testified that Jessica was not willing to work at the time he made the decision to start his own business, which was a year before Jessica filed for divorce. There was no evidence that Jessica objected to Anthony starting his own business nor was there any evidence that the divorce was foreseeable at the time he left his employment with Omaha Tile and Granite and started his own business.

The evidence indicates that Anthony's decision to start his own tile business was made in good faith. Accordingly, the court did not abuse its discretion in using Anthony's actual earnings to calculate child support rather than his earning capacity, as Jessica contends. We find no merit to Jessica's assignment of error.

*Division of Equity in Marital Residence.*

Jessica assigns that the court erred in awarding Anthony one-half of the equity in the martial residence, which the court determined to be $7,773.79. She argues that Anthony is not entitled to one-half of the equity because when he moved out in late May 2015, they were 5 months behind on the mortgage payments and the house was in foreclosure. Jessica's aunt helped her get the house out of foreclosure and Jessica had made all the mortgage payments since then.

Jessica also contends that the 2015 value of the house should be used in calculating the amount of equity, rather than the 2017 value. Based on the evidence presented by Anthony, the tax value of the house in 2015 was $120,200, and it was $130,000 in 2017. As of September 16, 2016, the balance on the mortgage was $114,452.42. There was no other evidence presented on the mortgage balance. Based on the 2017 value and the mortgage balance, the value of the equity in the home was $15,547.58. This was the equity amount used by the court in awarding Anthony one-half, or $7,773.79.

"The purpose of a property division is to distribute the marital assets equitably between the parties." Neb. Rev. Stat. § 42-365 (Reissue 2016). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

Although Jessica was the one who rescued the house out of foreclosure, she did so with the help of her aunt and she did not testify whether the aunt's financial help was a loan Jessica had to pay back or a gift. Jessica also had been paying the mortgage since Anthony moved out, but she was the one who continued to live in the house. She also testified that from the time the house was

purchased in October 2012 to May 2015, when Anthony left the house, he had made the majority of the house payments. Based on the evidence, it was fair and reasonable for the court to award Anthony one-half of the equity in the marital house.

In regard to the values used by the court in determining the amount of equity that existed, Jessica argued that the $130,000 value for 2017 was inaccurate because the home had an incomplete bathroom remodel that would decrease the value. However, she also testified that Anthony made numerous improvements to the home that she believed increased its value. She did not offer any other value for the home in 2017, but, rather, suggested that the value from 2015 should be used. Further, she did not offer any evidence as to the amount of the mortgage at the time of trial. The only amount was from September 16, 2016, which was 9 months before trial. This actually worked to Jessica's advantage because she had been paying the mortgage every month so the balance on the mortgage would be less than the $114,452.42 used by the court, resulting in more equity.

Based on the evidence presented to the trial court, we conclude that it did not abuse its discretion in awarding Anthony a one-half equity interest in the marital residence, and determining that amount to be $7,773.79.

*Child Support Under Temporary Order.*

Jessica assigns that the trial court erred in making retroactive changes to Anthony's child support obligation under the temporary order. The court found that the evidence demonstrated that the parties began exercising a joint physical custody arrangement shortly after the temporary order was entered, rather than Jessica having primary physical custody as set forth in the temporary order. As previously discussed, the trial court's finding is supported by the evidence. The parties had been employing a joint physical custody arrangement throughout the time the temporary order was in place. That being so, Anthony's temporary child support obligation should have been based on a joint custody calculation, rather than a sole custody calculation. If trial evidence establishes a joint physical custody arrangement, courts will presume joint support, regardless of how prior decrees or court orders have characterized the arrangement. *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013). Further, where a party proves that joint physical child custody exists, it is error for the trial court to refuse to apply a joint custody calculation to determine child support in a dissolution proceeding. *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999).

The trial court also found that the evidence demonstrated that Jessica had an earning capacity of $10.00 per hour, or $1,733.33 per month, rather than $600 per month as used in the calculation for temporary support. The court further determined that Anthony's monthly income for 2015 and 2016 was less than the amount utilized in calculating temporary child support. Anthony had monthly income of $1,948.41 during 2015, and $2,605.08 per month during 2016. In the temporary order, the court attributed monthly income of $3,200 to Anthony. The court found that the child support calculation it adopted for child support going forward (attachment "B" to exhibit 18), accurately reflected a proper child support calculation during the period of the temporary order. Thus, the court found that child support under the temporary order should be recalculated and retroactively reduced to $100 per month starting September 1, 2015.

We conclude that the trial court did not abuse its discretion in retroactively reducing Anthony's child support obligation under the temporary order to $100 per month based on a joint

physical custody calculation and the parties' actual incomes during the term of the temporary order.

## CONCLUSION

We conclude that the trial court did not err in awarding the parties joint physical custody of the children, using Anthony's actual income to calculate child support, awarding Anthony a one-half equity interest in the marital residence, and retroactively changing Anthony's child support obligation in the temporary order. Accordingly, the decree entered by the trial court is affirmed.

AFFIRMED.