IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

ROSENFELS V. ROSENFELS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SAGE ROSENFELS, APPELLANT,

V.

MARIA ROSENFELS, NOW KNOWN AS MARIA GEALY, APPELLEE.

Filed September 24, 2019.    No. A-18-874.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

John A. Kinney, of Kinney Mason, P.C., L.L.O., for appellant.

Anthony W. Liakos and Pamela Hogenson Govier, of Govier, Katskee, Suing & Maxell, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Sage Rosenfels appeals from the order of the district court for Douglas County, which dismissed his complaint to modify the parenting time schedule for the parties' children previously established in the decree dissolving his marriage to Maria Rosenfels, now known as Maria Gealy. The court also granted Maria's motion to dismiss her counterclaim. For the reasons set forth herein, we affirm.

### BACKGROUND

Sage and Maria were married in June 1999. They have three children: Peyton, born in 2001; Ava, born in 2004; and Lola, born in 2010. Sage played college football at Iowa State, where he

- 1 -

graduated in 2000. After college, Sage played professional football for several different NFL teams, and the family lived in various locations.

In 2012, the parties resided in Boulder, Colorado, where they participated in a legal separation action. They began living separately in March, and Maria moved to the Omaha, Nebraska, area in June. Sage moved to the Omaha area in early September after being released by his professional football team at the end of training camp and preseason. Through the Colorado separation action, the parties mediated a separation agreement and parenting plan, which were incorporated into a decree of legal separation filed in October in a Colorado court. The Colorado parenting plan provided:

> [T]he children will reside with [Maria] at all times not specifically allocated to [Sage]. As a general rule, [Sage] shall have reasonable and liberal parenting time as the parties agree. Given the children's ages, the parties shall take into account the children's activities in scheduling the parenting time. At this time, given the uncertainty of [Sage's] employment, we are not setting forth an exact schedule to follow and we are aware that in the future, if we desire to have a structured schedule, we may return to mediation or petition the court. We also agree that at such time as [Sage's] employment is stabilized, the parties will increase the parenting time for [Sage] as they agree is in the children's best interests.

The Colorado parenting plan also included provisions for vacation and holiday parenting time, provided that "[d]ay-to-day decisions" were to be made by the parent with whom the children were residing at the time the decision arose, and provided that "major decisions" concerning the children's health, education, and welfare were to be "allocated mutually" between the parties. Sage was to pay monthly child support to Maria of $2,469.50 commencing October 1. The parties divided a sizeable marital estate between them during the separation action, and according to the parties' testimony in the current modification action, neither of them needs to work in order to pay their bills and expenses.

On October 8, 2013, Sage filed a complaint for dissolution of marriage in the Douglas County District Court. The parties mediated a parenting plan, which was approved by the district court and incorporated into the decree of dissolution entered by the court on October 28, 2014. As agreed in the parenting plan, the court awarded the parties joint legal and physical custody of the children, subject to the parenting time allocated under the parenting plan. The parenting plan provided that Maria was to have parenting time every week beginning Sunday at 7 p.m. and concluding Wednesday at the commencement of school or 10 a.m. when school was not in session. Sage's weekday parenting time was to start on Wednesday each week at the commencement of school or 10 a.m. if school was not in session and conclude Friday at the commencement of school or 10 a.m. if school was not in session. The parties alternated weekend parenting time beginning Friday at the commencement of school or 10 a.m. if school was not in session and concluding on Sunday at 7 p.m. The parenting plan also included provisions for holiday and vacation parenting time, decision making, and a right of first refusal in the event a parent was unable to provide personal care for the children for a period of 12 hours or more during his or her parenting time. The district court attached child support worksheets to the decree showing its calculations, but it did not order the payment of child support, finding a deviation was warranted due to "the parties'

custodial arrangement, relative economic circumstances[,] and the division of expenses related to the children [also set forth in the decree]."

On October 11, 2017, Sage filed a complaint to modify, alleging that since entry of the decree of dissolution, a substantial and material change of circumstances had occurred, which warranted a modification of regular parenting time, vacation parenting time, the right of first refusal provision, and certain other provisions of the decree. Specifically, Sage alleged that he "is a former professional and college football player and his ability to earn an income is dependent upon travel. Media work in college and professional football throughout the country would require extended time away from the State of Nebraska." Sage alleged that a change to the schedule "providing for week on and week off parenting time would allow him to appropriately support his children financially and build a career while maintaining joint physical custody." Sage sought modification of the regular and vacation parenting time schedules, removal of the family member provision in the right of first refusal, and modification of the mediation and expense reimbursement provisions of the decree.

On November 21, 2017, Maria filed an answer and counterclaim to modify the decree. In her answer, Maria admitted "that portion of paragraph 12 of [Sage's complaint] that alleges a material change of circumstances has occurred," but she denied "the remainder" of that paragraph of the complaint. In her counterclaim, Maria alleged that a substantial and material change of circumstances had occurred since entry of the decree, which warranted modification of the decree. She requested that the parties' parenting plan be modified with respect to the vacation and holiday provisions, that Sage be required to participate in counseling to improve his relationship with the children, and that Sage be ordered to pay her attorney fees and costs.

Trial was held before the district court on August 14, 2018. Prior to trial, the parties stipulated that if called to testify, Ava would testify that she wanted to keep the current parenting time schedule. The court took judicial notice of this stipulation, which had previously been approved by the court in an order entered on August 9. Sage testified; he also presented testimony from Maria and from Damon Benning. The court received exhibits offered by Sage: copies of certain email and text communications between the parties, photographs depicting some of Sage's charitable work, copies of employment opportunity letters received by Sage, and Sage's proposed findings (received as an aid to the court). After Sage rested, Maria made oral motions to dismiss both Sage's complaint and her counterclaim, which motions were granted by the court. We summarize Sage's evidence below and further address the court's ruling on Maria's motions to dismiss in our analysis.

Most of Sage's testimony focused on his efforts to build a post-NFL sports media career and to pursue opportunities for charitable work. Sage testified that when his professional football career ended, he moved to Omaha to be close to his children. According to Sage, the divorce "and the agreements that were related to the divorce," came about at a time when he was retiring from a 12-year career in the NFL and at a time when he "had no idea" what he wanted to do next. Sage testified that "over time [he] realized that after five years of college and twelve years in the NFL, that football really was and is [his] expertise." At some point, Sage began pursuing opportunities in sports media by doing radio shows, podcasts, and some television work with various outlets, as well as some writing, and he was engaged in such work at the time of trial. Sage, however, declined

to describe the media opportunities he has been engaged in as "jobs," testifying that most of these opportunities were really "a lot of single one off things" lasting somewhere between 15 minutes and an hour. Sage is also involved in "QB Collective," a group that, among other things, puts on football camps around the country to expose "top high school kids" to NFL style coaching.

According to Sage, the sports media opportunities he has pursued have been limited by the fact that his "home base" is in Omaha, rather than in any "NFL cities" or Iowa where he went to college. Sage indicated that his opportunities to advance in a sports media career have also been limited by the current parenting time schedule. He testified that for some opportunities it is "vital" that he be able to access locker rooms and interview players because "[t]hat's where you get the inside information" and "[y]ou're not really taken seriously if you're never there." Sage expressed that a week-on-week-off parenting time schedule would be beneficial to him in that it would allow him to obtain additional employment in the sports media field and facilitate his work with the QB Collective. On cross-examination, Sage testified that the reason he filed the complaint to modify was that he wanted to explore career opportunities. He testified further that he would "like to have a sharper focus rather than just trying to patch things together and figure out what [he] can do when [he doesn't] have the kids to stay busy . . . and have an impact and create this career."

At the time of trial, Sage did not have a guarantee that he would obtain employment from an employer in the sports media field if the parenting time schedule was modified per his request, but he testified that a Minneapolis radio station would be willing to have him work in the studio on a Monday, Wednesday, Friday radio show every other week if the parenting time schedule was modified. The district court received several letters offered by Sage from potential employers who indicated that such a schedule would be beneficial in their willingness to offer Sage employment.

Sage testified that while he is financially secure, he wants to work because he feels it would be helpful to the children if he did make more money. He also wants to pursue opportunities for charitable work because he feels like it is important for the children to see that he is "not just trying to make more money or just trying to hang out and play golf," but rather, that he is "trying to have a positive impact on the world." Sage has tried to use his media "platform" to bring awareness to a friend's nonprofit that works toward ending illiteracy in Haiti. Sage also has used his media platform to work with a company in Iowa that builds small "extremely strong" homes that are hurricane- and earthquake-proof to connect the company with larger nonprofit organizations and to bring awareness to something that "could be kind of a game changer in housing people around the world." Sage has traveled for his charitable work, and Maria's reluctance to accommodate requests for variations in the current parenting time schedule, has led to him declining some opportunities to travel for longer periods. Sage testified that having a week at a time to devote to travel would be helpful to him in pursuing some of his charitable work.

Sage testified that over the preceding 2 years, Maria has not always cooperated with his requests to adjust the schedule based on particular sports media opportunities he had received. Sage also described communication difficulties he and Maria had, especially when the children were younger. Sage expressed surprise at Maria's deposition testimony that the parties communicate well; according to Sage, the parties "don't communicate well at all." He testified that a week-on-week-off schedule would also facilitate "a more peaceful existence" between himself and Maria by limiting their interactions. He agreed that it has not been difficult for the

parties to share joint legal custody of the children, but he testified that it has been challenging to try to work with Maria to make changes in the current parenting time schedule.

Sage also testified about the parties' children. At the time of the modification trial, Peyton was a junior in high school and was doing well in school. Sage feels he has a "great relationship with Peyton." Ava was starting 9th grade at a different high school from the one attended by Peyton, and according to Sage, was getting "very good grades." Ava is active in soccer and show choir and has "a lot of friends." Sage felt that his relationship with Ava was "challenging," but he testified that at the time of trial, it was the best it had been for a number of years. He testified that Ava and Maria are "extremely close," describing them as "best friends." Lola was 8 years old, starting third grade in the same school system attended by Ava, and has a good relationship with both of her parents. Sage testified that a week-on-week-off parenting time schedule would benefit the children by providing them with "[l]ess back and forth" and even more stability and consistency than the current schedule.

Benning testified generally about his experiences in building a post-football sports media career based in Omaha, indicating that Sage's opportunities would be somewhat different given that Sage did not play college football in Nebraska and had had a longer professional football career. Benning testified, based on his own experiences, that having longer periods of availability to travel to relevant locations would be beneficial to building a sports media career.

Maria testified about the flexibility in her schedule, given her financial wherewithal, the "home organization company" she started, and the importance of the children seeing their parents as involved and active members of society. She agreed that Sage is a good and involved father and generally good at following the current parenting plan. While Maria agreed that some changes needed to be made with respect to the right of first refusal and certain vacation time provisions of the parenting plan, she testified that changing the regular parenting time schedule would not be "fair" to the children or in their best interests because they were "doing great." Maria acknowledged her deposition testimony that the parties were able to communicate "just fine," but she agreed that she had answered certain interrogatories, indicating that the "communication necessary to effectively facilitate exchanges, vacation days and appointments is very difficult" and that their communication is "minimal, almost exclusively by email." She acknowledged that when Sage had missed parenting time in the previous year and a half, she had not allowed him any makeup time, agreed that she had told him repeatedly that she was "sticking to the decree," and testified that this would continue to be her "policy moving forward."

On September 7, 2018, the district court entered an order, finding that Sage had not met his burden of proving a material change in circumstances and dismissing both Sage's complaint and Maria's counterclaim. In its order, the court stated that it had evaluated the case "under the standards prescribed for a modification of a consent Decree and well established by our Supreme Court." In reviewing the evidence the court found the doctrine of res judicata applicable, and it stated that the Supreme Court "has given much more accordance to consent decrees than ordinary judgments." The court noted that "ordinarily Orders by the District court will not be modified as a consent decree over the objection of one party." It stated further, "In this case, what is before the Court and what the Court has evaluated is that the Court will not modify unless there is a material and substantial change in circumstances or that the custodial parent is unfit or that the best interests

of the children require such action." The court found that Sage had not met his burden in this case, stating there is nothing here to prove that "any change is material or substantial at this point," that either parent is unfit, and that "the best interests of the children would improve or would change or would be better with anything in a change here." The court found that the children were "doing well" and that there had not been any evidence that "their best interests are not being served under this parenting plan that has been working since 2012 and was incorporated into a [divorce] Decree in 2014." In evaluating the children's best interests, the court considered the statutory factors, which are now set forth in Neb. Rev. Stat. § 43-2923 (Reissue 2016), and it found nothing to show "any detriment to the children or that any change would be in the best interests of the minor children." Accordingly, the court granted Maria's motion to dismiss both Sage's complaint and her counterclaim.

## ASSIGNMENTS OF ERROR

Sage asserts, reordered and restated, that the district court erred in (1) allowing Maria to dismiss her counterclaim after Sage rested his case given that the judicial admission contained in the counterclaim was relied upon by Sage while presenting his evidence, (2) failing to decide the case using the proper standard of review, (3) determining that the doctrine of res judicata was applicable to the case at bar, and (4) not finding a change in circumstances in the children's best interests warranting modification of parenting time.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *VanSkiver v. VanSkiver*, 303 Neb. 664, 930 N.W.2d 569 (2019). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Blank v. Blank*, 303 Neb. 602, 930 N.W.2d 523 (2019).

## ANALYSIS

*Dismissal of Counterclaim.*

Sage asserts that the district court erred in allowing Maria to dismiss her counterclaim after Sage rested his case given that the judicial admission contained in the counterclaim was relied upon by Sage while presenting his evidence. He argues that Maria filed a pleading stating a substantial and material change in circumstances had occurred since entry of the decree, that he presented evidence with that pleading and admission in place, and that had he "known Maria was denying a change in circumstances[,] he may have presented quite different evidence during his case." Brief for appellant at 23. We disagree that the assertions in Maria's counterclaim amounted to a judicial admission of the allegations in Sage's complaint, and we find no error in the court's dismissal of her counterclaim.

In her answer, Maria admitted that portion of the paragraph in Sage's complaint that alleged a material change in circumstances had occurred, but she denied the remainder of that paragraph. In other words, she denied the circumstances alleged by Sage to constitute a material change in

circumstances. In her counterclaim, Maria alleged that since entry of the decree, a substantial and material change of circumstances had occurred, and she sought modification of the vacation and holiday provisions of the parenting plan. She also asked that Sage be required to participate in counseling to improve his relationship with the children.

A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true. *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018). Generally, an admission made in a pleading on which the trial is had is more than an ordinary admission; it is a judicial admission. *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018). It is an elementary rule of pleading that matters admitted by the pleadings need not be proved. *Id.*

Maria sought modification of different provisions of the parenting plan than those sought by Sage. Clearly, a material change in circumstances sufficient to warrant modifying one provision of a divorce decree does not necessarily equate to a material change in circumstances with respect to other provisions of the decree. We do not see Maria's assertion in her counterclaim of a material change in circumstances sufficient to warrant modifying the vacation and holiday provisions of the parenting plan as a judicial admission with respect to the modification of other provisions of the parenting plan. In fact, aside from alleging that Sage should be required to participate in counseling, Maria specifically alleged that all other provisions of the parenting plan should "remain in full force and effect."

Further, Maria was entitled to dismiss her counterclaim prior to adducing evidence thereon. A plaintiff may dismiss an action without prejudice, as a matter of right, at any time before final submission of the case. Neb. Rev. Stat. § 25-601 (Reissue 2016). The statutory right to voluntary dismissal under § 25-601 is not a matter of judicial grace or discretion, but neither is it absolute or without limitation. *Millard Gutter Co. v. American Family Ins. Co.*, 300 Neb. 466, 915 N.W.2d 58 (2018). Under certain circumstances, a district court has the authority to deny a voluntary dismissal pursuant to § 25-601 and may attach conditions to the dismissal where justice and equitable principles so require. *Millard Gutter Co. v. American Family Ins. Co., supra*. Voluntary dismissal may properly be conditional where it would deprive or endanger a right accrued to the adverse party in the very cause sought to be dismissed. *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999). The right to dismiss is not an exclusive right of the plaintiff, but also applies to a defendant with reference to his counterclaim. *Dawson v. Papio Nat. Resources Dist.*, 210 Neb. 100, 313 N.W.2d 242 (1981), *modified on denial of rehearing* 210 Neb. 612, 316 N.W.2d 311 (1982); *Harbert v. Mueller*, 156 Neb. 838, 58 N.W.2d 221 (1953); *Feight v. Mathers*, 153 Neb. 839, 46 N.W.2d 492 (1951).

Sage's argument that he relied on Maria's assertions in her counterclaim in the presentation of his case in chief is not persuasive. Again, Maria admitted in her answer that a material change in circumstances had occurred, however, she denied that the circumstances alleged by Sage amounted to a material change in circumstances. The material change in circumstances alleged in Maria's counterclaim did not relate to changing the parenting time schedule which is at issue in this appeal. Regardless of any reliance by Sage on Maria's assertions in her counterclaim, he had the burden to prove his case for modification, and as discussed further below, he did not adduce

sufficient evidence to demonstrate a prima facie case of a material change of circumstances with respect to the parenting time provisions he sought to modify. Maria had the right to dismiss her counterclaim, and it was within the court's discretion to grant her motion. Sage's assignment of error fails for the reasons set forth above.

*Standard of Review.*

Sage asserts that the district court erred in failing to decide the case using the proper standard of review. He argues that the court should have considered his evidence using the standards applicable to motions for directed verdicts, given that the court granted Maria's motion to dismiss Sage's complaint made at the conclusion of Sage's evidence. We agree. The court never heard any evidence from Maria, and the only evidence before it was that adduced by Sage.

For purposes of appellate review, a motion to dismiss and a motion for directed verdict are treated similarly. *Johnson v. Johnson*, 20 Neb. App. 895, 834 N.W.2d 812 (2013). See, also, *American Central City v. Joint Antelope Valley Auth.*, 281 Neb. 742, 807 N.W.2d 170 (2011) (motion to dismiss at close of evidence has same legal effect as motion for directed verdict). In the context of a motion to dismiss made at the close of the plaintiff's evidence in a proceeding to modify a decree of dissolution, the Nebraska Supreme Court has observed that in a court's review of evidence on a motion to dismiss, the nonmoving party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can be reasonably drawn therefrom, and where the plaintiff's evidence meets the burden of proof required and the plaintiff has made a prima facie case, the motion to dismiss should be overruled. *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994). See, also, *Johnson v. Johnson, supra* (where former husband adduced sufficient evidence to demonstrate prima facie case of material change of circumstances in action to modify child support, district court abused discretion in adopting referee's recommendation of directed verdict at close of husband's evidence). If, on a motion to dismiss, there is any evidence in favor of the nonmoving party, the case may not be decided as a matter of law. *Id.* When a trial court sustains a motion to dismiss, it resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw only one conclusion. *Id.*

Although the district court did not reference these standards in its dismissal order, it is not necessarily clear that the court did not apply these standards in its consideration of Sage's evidence as it did not make any explicit findings with respect to the weight or credibility of the evidence before it. Regardless, in our consideration of Sage's fourth assignment of error, we have applied the relevant standards to determine whether Sage adduced sufficient evidence to demonstrate a prima facie case of a material change of circumstances with respect to parenting time.

*Applicability of Doctrine of Res Judicata.*

Sage asserts that the district court erred in its application of the doctrine of res judicata and its determination that consent decrees will not ordinarily be modified over the objection of one party.

Sage asserts that the district court erroneously applied case law related to modification of financial issues. Sage notes *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992),

where the Nebraska Supreme Court stated that a consent decree is usually treated as an agreement between the parties, is accorded greater force than ordinary judgments, and ordinarily will not be modified over objection of one of the parties. Sage argues that *Desjardins* concerned the modification of alimony, which involves a different statutory provision than that governing the modification of parenting time, and that most subsequent cases citing *Desjardin* for this proposition are cases concerning child support or alimony issues. He also argues that when cases cite *Desjardins* in connection with custody or parenting time issues, they do so "to make the point that changes in circumstances which were within the contemplation of the parties at the time of the decree are not material." Brief for appellant at 20.

Our review of the district court's order shows that it applied the correct law with regard to modification actions. While the order referenced consent decrees and res judicata, it went on to set forth the appropriate burden for proving a material change in circumstances. In *Eric H. v. Ashley H.*, 302 Neb. 786, 925 N.W.2d 81 (2019), the Nebraska Supreme Court stated that "[p]roof of a material change of circumstances is the threshold inquiry in a proceeding on a complaint to modify, see [*Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015)], because issues determined in the prior custody order are deemed res judicata in the absence of proof of new facts and circumstances, see *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999)."

In the present case, the district court was acknowledging that in order to change the parenting time provisions agreed to by the parties, approved by the court, and incorporated into the decree, Sage needed to establish an intervening change in circumstances warranting a modification. While the fact that the parties in this case agreed to the current parenting time schedule is a consideration, we do not see that the court placed undue emphasis on this fact in its review of whether a material change in circumstances had occurred. The court went on to discuss the standards for showing a material change in circumstances since entry of the decree, and we discuss its application of those standards, in light of Maria's motion to dismiss, below.

*Modification of Parenting Time.*

Sage asserts that the district court erred in not finding a change in circumstances in the children's best interests warranting modification of parenting time.

Parenting time established by a marital dissolution decree may be modified upon a showing of a material change of circumstances affecting the best interests of the children. See *VanSkiver v. VanSkiver*, 303 Neb. 664, 930 N.W.2d 569 (2019). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.* The party seeking to modify parenting time has the burden to show a material change in circumstances affecting the best interests of the child. *Id.* The best interests of the children are primary and paramount considerations in determining and modifying parenting time. *Id.*

Pursuant to § 43-2923:

(6) In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member. For purposes of this subdivision, abuse and family or household member shall have the meanings prescribed in section 42-903; and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse. For purposes of this subdivision, the definitions in section 43-2922 shall be used.

While Sage presented considerable evidence to show that a change in the parenting time schedule would benefit him as he seeks to build a sports media career, he has not shown a material change in circumstances affecting the best interests of the children that would warrant changing the parenting time schedule. Sage argues that since retiring from football in 2012, he has slowly been laying the groundwork for a media career but that at the time of the parties' divorce in 2014, he was uncertain what he "was going to do moving forward with his life." Brief for appellant at 13. Sage also argues that Maria's "rigid stance regarding adherence to the parenting schedule" was not something he could foresee at the time of the original parenting plan. Sage contends he should not be penalized for "pursuing a career and restricted to a parenting time schedule that was entered into before Sage knew what would be required in the only real career that is available to him." Brief for appellant at 17. While Sage acknowledges that he is not asking to leave the state with the children, he argues that the rationale applied in removal cases would be helpful to consideration of his request for modification of parenting time in this case. See *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015) (significant career enhancement for custodial parent is legitimate reason for removal). However, this court has declined to apply removal analysis to requests to modify custody based on an intrastate move of a custodial parent, and we decline to apply it here to Sage's request to modify parenting time. See *Bohnet v. Bohnet*, 22 Neb. App. 846, 862 N.W.2d 99 (2015) (declining to apply removal analysis to long-distance intrastate move).

At the time of the divorce, Sage had already retired from football and by his admission, he did not need to work in order to financially support his children. We certainly understand Sage's desire to work in the sports media field; however, pursuit of this interest is not necessary to promote the best interests of the children, which, of course, is the focus here. Similarly, Sage's charitable work is commendable; however, it is not necessary to provide for the children. These circumstances are not enough to change a parenting time schedule which has worked very well for the children over several years. And, while the parties may not communicate easily with respect to scheduling and parenting time exchanges, the record does not show that they are unable to work together to accomplish these parenting tasks. In short, Sage did not present any evidence to show that a change in the parenting time schedule was necessary for the benefit the children.

After resolving any controverted evidence in Sage's favor and giving him the benefit of all inferences based upon his evidence, we conclude that Sage failed to adduce sufficient evidence to

prevent a ruling that, as a matter of law, there was no material change of circumstances warranting a change in the parenting time schedule. The district court did not abuse its discretion in granting Maria's motion to dismiss Sage's complaint.

## CONCLUSION

The district court did not err in granting Maria's motion to dismiss her counterclaim, and Sage's assignment of error about the court's application of the doctrine of res judicata fails for the reasons discussed above. In light of Maria's motion to dismiss Sage's complaint made at the conclusion of Sage's evidence, we have used the standards applicable to motions for directed verdicts in considering whether Sage adduced sufficient evidence to demonstrate a prima facie case of a material change of circumstances with respect to parenting time, and we conclude that he did not adduce sufficient evidence. Accordingly, the court did not abuse its discretion in granting Maria's motion to dismiss Sage's complaint.

AFFIRMED.