Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/08/2022 09:06 AM CST

Becky Teresa Buderus, appellee, v.
Patrick Scott Buderus, appellant.

___ N.W.2d ___

Filed February 8, 2022.    No. A-21-260.

1. **Modification of Decree: Child Support: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. The same standard applies to the modification of child support.

2. **Modification of Decree: Attorney Fees: Appeal and Error.** In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion.

3. **Modification of Decree: Child Support: Proof.** A party seeking to modify a child support order must show a material change of circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered.

4. **Modification of Decree: Child Support.** A decree awarding child support will not be modified because of a change of circumstances which was in the contemplation of the parties at the time the original or preceding order was made, but only those anticipated changes which were specifically noted on the record at the time the previous order was entered will prevent modification.

5. **____: ____.** Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent.

6. **Modification of Decree: Child Support: Res Judicata.** In the absence of proof of new facts and circumstances arising since the time of the

original decree, an allowance of child support therein will be deemed res judicata.

7. **Attorney Fees.** Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

8. ____. Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits.

9. **Divorce: Attorney Fees.** A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases.

10. **Judgments: Attorney Fees.** Silence of a judgment on the issue of attorney fees must be construed as a denial of the request.

Appeal from the District Court for Dixon County: Bryan C. Meismer, Judge. Reversed and remanded with instructions.

Logan J. Hoyt and Thomas B. Donner, of Donner Law Offices, for appellant.

No appearance for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Pirtle, Chief Judge.

### INTRODUCTION

Patrick Scott Buderus appeals from an order of the district court for Dixon County, Nebraska, increasing his child support obligation from $300 per month to $591 per month and modifying the procedure by which the parties settle disputes related to daycare expenses. For the reasons that follow, we conclude the district court abused its discretion in modifying an existing child support order absent proof of a material change in circumstances. Accordingly, we reverse the district court's order and remand the cause with instructions to dismiss the complaint for modification.

### BACKGROUND

Patrick and Becky Teresa Buderus were married in April 2009 in Wayne County, Nebraska. Patrick and Becky had one child together, who was born in 2012. Thereafter, in October 2012, Becky filed a complaint for dissolution of marriage.

Patrick and Becky then negotiated and agreed to a "Stipulation and Property Settlement Agreement" addressing all pertinent issues related to the dissolution of marriage, as well as custody and child support for the minor child. The district court approved the agreement and incorporated it into a final decree of dissolution entered in February 2014. Except to the extent that it was modified by the court's final order on modification of child support, there is no dispute that the 2014 decree remained "in full force and effect" throughout the life of this case.

The 2014 decree awarded the parties joint legal custody of the minor child and awarded primary physical custody to Becky, subject to Patrick's reasonable parenting time as set forth in a separate parenting plan. Importantly for purposes of this appeal, the decree settled a factual dispute as to the proper computation of Patrick's income for purposes of calculating child support. Attached to the decree was exhibit A, which calculated Patrick's income using his average monthly income over a 3-year period from 2010 to 2012. Specifically, Patrick's income was computed by combining his net farm profit reported on his schedule F tax form with an "add[-]back of depreciation," resulting in a total 3-year income of $57,274 and an average monthly income of $1,590.94. Applying this amount to worksheet 1 of the Nebraska Child Support Guidelines yielded a monthly obligation of $312 for Patrick, and application of Neb. Ct. R. § 4-218 (rev. 2013) adjusted that monthly obligation to $288.

With these calculations in mind, the parties stipulated that Patrick be ordered to pay child support in the amount of $250 per month from March 2014 to August 2015 and $300 per month thereafter. The agreement provided that these amounts were "based upon the income of the parties as [s]et forth on the 'Summary of 2010, 2011 and 2012 Tax Returns' attached to said Exhibit 'A'." The parties further stipulated that "good cause exists to deviate from the Nebraska Child Support Guidelines to provide child support in the amount set forth herein."

In addition to child support, the agreement also stipulated that each party pay an equal share of "work related day care expenses." The agreement included a detailed procedure which was to be followed "[i]n the event the parties are unable to agree on the amount and/or terms for payment of such work related day care expenses." First, "within 90 days of the date of incurring work related day care expenses, the party who incurred such day care expenses shall file a statement with the Clerk of the District Court showing all work related day care expenses paid together with supporting documentation." The same party "shall concurrently deliver a copy thereof by United States first class mail postage prepaid to the other party." Then, "[w]ithin 30 days of such filing, the other party shall pay . . . or, shall file with the Clerk of the District Court an objection to such work related day care expenses and shall" serve a copy of such objection to the other party in the same manner as above. If the party who incurred daycare expenses fails to file a claim within 90 days, "it shall be conclusively presumed that no such work related day care expenses were incurred prior to such time period."

In October 2019, the State filed a motion to intervene "for the purpose of allowing the State [to] enforce the child support order in this matter." The court granted the State's motion, and the State filed a complaint for modification of child support. The complaint alleged that modification was justified on the grounds that Patrick's child support obligation varied "by more than the percentage amount or other criteria established by Supreme Court rule." The State ultimately requested the 2014 decree "be modified so as to increase [Patrick's] child support obligation."

In August 2020, the State filed a motion to dismiss its own complaint on the grounds that Patrick "has provided additional financial information which, if accepted without objection and/or found to be true, would not support modification of [Patrick's] child support order." On the same day, Becky filed an objection to the State's motion, requesting that the

court allow her to prosecute the State's complaint as opposed to filing a new complaint for modification in her own behalf. The court sustained Becky's objection and allowed her to move forward on the State's complaint for modification.

Thereafter, Patrick filed an answer and counterclaim to the complaint, requesting that the complaint be dismissed and seeking a downward modification of child support. However, in his brief on appeal, Patrick admits that he "did not argue for or produce evidence supporting a downward modification at trial." Brief for appellant at 8. Patrick also requested that he be awarded attorney fees from the date the court allowed Becky to prosecute the action, arguing further litigation was unnecessary at that point because this case could be resolved through a "simple application of the child support guideline rules."

A trial on the complaint for modification of child support was held in February 2021, wherein Patrick and Becky were the only witnesses to testify. The central dispute was the proper computation of Patrick's income for purposes of calculating child support. The parties generally agreed, and the evidence confirmed, that Patrick received approximately $3,000 per month in "custom hire" income from Plum Creek Dairy, along with variable amounts of income arising out of Patrick's farming operation raising and selling livestock.

Patrick's counsel argued that if Patrick's monthly income is computed in the same manner as in the 2014 decree, then his income is substantially the same as it was in 2014. In support of this contention, Patrick submitted exhibit 117, which is a summary of Patrick's tax returns from 2017 to 2019. Therein, like in the 2014 decree, Patrick's income was computed by combining his net farm profit reported on schedule F with an add-back of depreciation, resulting in a total 3-year income of $56,426 and an average monthly income of $1,599.17. Application of this amount to worksheet 1 of the child support guidelines yielded a monthly obligation of $325 for Patrick, and application of § 4-218 of the child support guidelines adjusted that monthly obligation to $318. This is $18

higher than Patrick's stipulated obligation and $30 higher than Patrick's adjusted obligation as it was calculated in 2014.

Becky's counsel, on the other hand, argued, "[I]t's quite apparent that [Patrick's] income went up substantially from 2014 . . . . His uncontroverted testimony today is he gets two payments of $1,500 per month. That is double what he was making then." Accordingly, in her proposed child support calculation, Becky listed Patrick's monthly income as $3,000, resulting in the requested monthly obligation of $508. However, Becky testified that in 2014, Patrick received roughly "[t]he same amount as he's claiming now" in compensation from Plum Creek Dairy. Indeed, Patrick's tax returns from 2015 to 2019 indicate that he was at all times receiving approximately $3,000 per month, which he reported as custom hire income on schedule F. Thus, there is apparently no dispute as to Patrick's gross monthly income in connection with his duties at Plum Creek Dairy. Rather, the dispute pertains to the propriety of computing Patrick's monthly income using his net farm profit as reported on schedule F, which accounts for Patrick's additional income from livestock sales and deducts Patrick's reported farm expenses.

Patrick testified that at the time of trial, he raised around 50 head of beef cattle on the 7 acres where he lived and owned 25 to 30 dairy cows and "then about that many calves" at Plum Creek Dairy. Patrick admitted that his livestock operation had expanded since 2014, at which time he raised only three beef cows on the 7 acres and owned only nine dairy cows. Patrick clarified that although he owned a number of dairy cows, the livestock he owned generated income only when they were sold, and that he did not generate income from milk production at Plum Creek Dairy. Patrick further testified that his schedule F income would include any proceeds from livestock sales in a given year. Indeed, Patrick's tax returns indicate he earned between $3,000 and $12,500 per year from sales of livestock.

Becky expressed skepticism as to the propriety of Patrick's reporting his income on schedule F, accusing Patrick of doing so to avoid paying taxes and child support. Becky repeatedly characterized Patrick's farming operation as a "hobby farm," emphasizing her belief that Patrick "claims to be a 'farmer' so that this Court will allow him to deduct depreciation from his hobby farm." However, Patrick testified that his tax returns were correct to the best of his knowledge and were at all times prepared by his professional accountant. Moreover, Patrick testified that his income had been reported in the same manner since prior to the 2014 decree.

In addition to modifying child support, Becky requested a modification to the language in the 2014 decree regarding payment of daycare expenses. Specifically, Becky requested that the court "delete the provision that I have to mail receipts to [Patrick], file copies with the Clerk of the District Court and try to get [Patrick] to agree with the amount that he has to pay." Becky testified that Patrick had made only a single $100 contribution to daycare expenses in the 7 years since the divorce. In September 2020, Becky filed an affidavit in support of the present modification, in which she attested to the daycare expenses she incurred and attached receipts to that effect. However, there is no indication that Becky ever attempted to utilize the procedure set forth in the 2014 decree prior to the modification proceedings in this case. Becky testified that at some point in the past, she "sent text messages with the receipt of daycare, and it really hasn't changed"; however, Patrick testified that he received "[o]ne text" in the 7 years since the divorce.

In March 2021, the court entered an "Order on Modification of Child Support" noting that Patrick "alleges that a recalculation of child support is improper because his income has not changed since the 2014 Order." The court added, "[I]t is not lost on this Court that the income dispute of the parties in 2021 is basically the same as the income dispute in 2015 [sic] (computation of [Patrick's] income), and that in 2015

[sic] the parties negotiated and *agreed* to the current obliga-
tion." (Emphasis in original.) Rather than identifying a mate-
rial change in circumstances justifying modification, the court
reasoned as follows:

> The Court feels that it has the equitable power and duty
> to come to a decision that is fair to all involved including
> the minor child of the parties. For that reason, the Court
> finds that a recalculation of child support is warranted in
> this case and [that] the application for a modification of
> child support shall be granted.

The court acknowledged that Patrick's 2018 and 2019 tax
returns "outline income from Livestock . . . as well as income
(approximately $36,000.00 each year) from 'custom hire.'"
Ultimately, the court concluded that "equity will be best served
by calculating [Patrick's] income by deducting standard taxes
from his 'custom hire' income, instead of just looking at Line 7
(Adjusted Gross Income) of his tax returns."

Having decided to abandon the method of computing
Patrick's monthly income which was negotiated and agreed
to in 2014, the court turned to recalculating child support.
However, the court did not rely on exhibit 104, which was the
child support worksheet Becky offered at trial listing Patrick's
monthly income of $3,000. Rather, the court resorted to a prior
child support worksheet attached to exhibit 100, which identi-
fied a monthly income of $2,835 for both Patrick and Becky.
The court determined that this latter worksheet "closely approx-
imates the Court-Determined income of the parties . . . and
calculates a child support obligation of $591.00 for [Patrick],
which shall be the new amount Ordered by the Court."

With regard to Becky's request to modify "the childcare
language," the court ordered that Patrick and Becky "divide the
work or school related daycare and transport expenses equally."
The court then established a simplified procedure under which
Becky "is Ordered to provide receipts for actual expenses at
least every 90 days, and [Patrick] is Ordered to remit pay-
ment for his one-half share within 30 days of receiving the

receipts." The court added that "[a]ny provision of the prior Court's Order not specifically altered by this Order shall remain in full force and effect." Patrick now appeals.

## ASSIGNMENTS OF ERROR

Patrick assigns that the district court erred in (1) modifying the decree of dissolution of marriage when there was no material change in circumstances and (2) failing to rule upon Patrick's request for attorney fees and failing to order attorney fees.

## STANDARD OF REVIEW

[1] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). The same standard applies to the modification of child support. *Id.*

[2] In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Id.*

## ANALYSIS

[3-6] A party seeking to modify a child support order must show a material change of circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). A decree awarding child support will not be modified because of a change of circumstances which was in the contemplation of the parties at the time the original or preceding order was made, but only those anticipated changes which were specifically noted on the record at the time the previous order was entered will prevent modification. *Id.* Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the

financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999). In the absence of proof of new facts and circumstances arising since the time of the original decree, an allowance of child support therein will be deemed res judicata. *Id.*

*Upward Modification of Child Support.*

Under the 2014 decree, Patrick and Becky agreed to compute Patrick's monthly income using the method set forth in exhibit A attached to the decree. This stipulated computation combined Patrick's net farm profit reported on schedule F over a 3-year period, added back the amount of reported depreciation for each year, and then calculated an average monthly income from the total. Under this method of computation, Patrick's average monthly income was $1,590.94 in 2014. Application of this amount to worksheet 1 from the child support guidelines yielded a monthly child support obligation of $288 for Patrick. However, the parties stipulated that good cause existed to deviate from the child support guidelines, and they agreed to a compromised child support obligation of $250 per month for roughly the first year and $300 per month thereafter. Thus, at the time of trial on the complaint for modification of child support, Patrick's child support obligation was $300 per month.

The complaint for modification of child support in this case alleged that modification was justified on the grounds that Patrick's child support obligation varied "by more than the percentage amount or other criteria established by Supreme Court rule." Under Neb. Ct. R. § 4-217, there is a rebuttable presumption of a material change in circumstances when an application of the child support guidelines would result "in a variation by 10 percent or more, but not less than $25, upward or downward, of the current child support obligation." Accordingly, in this case, there would be a rebuttable

presumption of a material change in circumstances if application of the child support guidelines would result in a variation of $30 or more in Patrick's child support obligation.

As shown in exhibit 117, using the method of computation set forth in the 2014 decree, Patrick's average monthly income was $1,599.17 at the time of trial. Application of this amount to worksheet 1 from the child support guidelines yielded a monthly contribution of $318 for Patrick—only $18 more than his then-current child support obligation of $300 per month. Accordingly, the evidence does not demonstrate a material change in circumstances under § 4-217. Rather, the record makes clear that Patrick's monthly income, when computed according to the stipulated method of computation set forth in the 2014 decree, remained more or less the same.

However, the court decided to abandon the stipulated method of computing Patrick's income, and instead, it applied a "Court-Determined" monthly income of $2,835, which yielded a monthly child support obligation of $591. Although it is not entirely clear how the court arrived at a monthly income of $2,835, the court ostensibly computed Patrick's monthly income by "deducting standard taxes from his 'custom hire' income, instead of just looking at Line 7 (Adjusted Gross Income) of his tax returns." We know that Patrick's custom hire income was $36,000 in 2019. To arrive at $2,835 per month, the court apparently calculated "standard taxes" at a total of $165 per month, or $1,980 per year. Not only is the court order vague as to how it arrived at these amounts, but the court's computation neglects to account for Patrick's income from livestock sales and his reported farm expenses. In addition to the $36,000 in custom hire income, Patrick's 2019 schedule F also includes $12,446 in income from livestock sales and $32,152 in total farm expenses, yielding a net farm profit of $16,294.

In 2014, the parties stipulated that Patrick's monthly income for purposes of calculating child support would be derived from a 3-year average of his net farm profit from schedule F with an add-back of depreciation. The record simply fails to

demonstrate a material change in circumstances justifying a modification in the stipulated method of computing Patrick's monthly income. When the stipulated method of computation is applied to the most recent 3 years of Patrick's tax returns, the result is a variation of less than $25 from his then-current obligation of $300 per month.

Accordingly, it was an abuse of discretion for the district court to abandon the stipulated method of computation and modify Patrick's child support obligation without identifying a material change in circumstances justifying such modifications. Thus, we reverse the district court's upward modification of Patrick's child support obligation.

*Resolution of Disputes Regarding*
*Daycare Expenses.*

Similar to the court's modification of child support, the court did not identify any material change in circumstances justifying a modification of the stipulated procedure for resolving disputes related to daycare expenses. While the evidence indicated that Patrick has failed to contribute his share of daycare expenses under the 2014 decree, there was no indication that Patrick's failure in this regard constituted a material change in circumstances which was not contemplated by the parties at the time of the 2014 decree. Rather, the 2014 decree included a detailed procedure to follow in the event of such a dispute. Far from indicating a material change in circumstances, this evidences an explicit contemplation of future disputes regarding daycare expenses. Accordingly, the procedure set forth in the 2014 decree, if employed, was capable of resolving these disputes without the court's modification, and it was an abuse of discretion for the court to modify the 2014 decree absent a material change in circumstances not contemplated at the time.

*Attorney Fees.*

[7-9] Patrick also assigns that the district court erred in failing to rule upon his request for attorney fees and failing

to award attorney fees. Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.* A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. *Id.*

[10] Although the pleadings do not include a request for attorney fees, Patrick made such a request at trial prior to the court's taking the matter under advisement. However, the court's final order is silent on the issue of attorney fees. Accordingly, Patrick emphasizes that the court's "failure to even address the matter requires some consideration by this Court." Brief for appellant at 20. However, the Nebraska Supreme Court has held that silence of a judgment on the issue of attorney fees must be construed as a denial of the request. *Murray v. Stine*, 291 Neb. 125, 864 N.W.2d 386 (2015). See *Olson v. Palagi*, 266 Neb. 377, 665 N.W.2d 582 (2003).

In light of this authority, we construe the court's silence as a denial of Patrick's request for attorney fees. Thus, the question before us is whether it was an abuse of discretion for the court to deny Patrick's request for attorney fees, and we find that it was not. Although we disagree with the court's decision on the issue of modification, under the court's ruling, Patrick was not the prevailing party. As such, it was not an abuse of discretion for the court to deny Patrick's request for attorney fees.

## CONCLUSION

We conclude the district court abused its discretion in modifying the 2014 decree without identifying any material change in circumstances justifying such modifications. Accordingly, we reverse the district court's order and remand the cause with instructions to dismiss the complaint for modification.

Reversed and remanded with instructions.